GROOB ET AL., APPELLEES, *v.* KEYBANK ET AL., APPELLANTS.

[Cite as *Groob v. KeyBank,* 108 Ohio St.3d 348, 2006-Ohio-1189.]

(No. 2004–0214—Submitted February 2, 2005—Decided March 29, 2006.)

LANZINGER, J.

{¶ 1} The question presented here is whether a bank may be held liable for breach of fiduciary duty or under the doctrine of respondeat superior when a bank employee uses confidential information obtained from a prospective borrower for the employee's personal advantage. We hold that a bank dealing at arm's length with a prospective borrower does not have a fiduciary duty to that prospective borrower unless special circumstances exist. We also hold that for an employer to be liable for a tortious act of its employee, that employee must be acting within the scope of employment when the employee commits the tortious act.

{¶ 2} This case is before us on a discretionary appeal by appellants, KeyBank National Association and KeyCorp (collectively, "KeyBank"), from the First District Court of Appeals' decision reversing the trial court and ordering a new trial on appellees' fiduciary-duty and respondeat superior claims.

{¶ 3} Appellee Jeffrey Groob learned in the spring of 1997 that Oldfield Equipment Company, Inc., a company that sold and rented hydraulic pumps, was for sale. Groob was interested in purchasing Oldfield and in May 1997 signed an agreement not to disclose any confidential business information that Oldfield's owner, John Scheve, might give him to evaluate a prospective purchase of the company. After researching the business and making a financial analysis, Groob offered Scheve $1.8 million for Oldfield.

{¶ 4} Groob began to look for financing. He first approached Peoples Bank of Northern Kentucky, but his loan application was turned down. Star Bank also had no interest in making the loan. Believing that he needed to get additional investment money, Groob contacted appellee Lowell Bowie for help. The two decided to pursue financing with KeyBank, a bank with which Bowie and Oldfield had an existing relationship. Groob himself was not a customer.

{¶ 5} Groob and Bowie met with Caroline Sapinsley, a loan officer, and Michael Kennedy, a credit officer, at KeyBank on October 28, 1997. Kennedy left the meeting after 15 minutes. Groob presented Sapinsley with a financial summary of Oldfield and later faxed her a draft of an asset-purchase agreement. A few days later, Sapinsley told Groob that KeyBank was not interested in providing financing. Although Groob and Bowie tried to find additional investors and submitted two additional proposals to Scheve, they were unsuccessful in their efforts to purchase Oldfield.

{¶ 6} In the meantime, while Groob and Bowie were looking for investors, Sapinsley informed Clark Sarver, another KeyBank customer, about Oldfield. Less than a week after she turned down Groob, Sapinsley's husband and Sarver sent a letter of intent to Scheve to purchase Oldfield for $1.8 million. Sapinsley resigned from KeyBank in March 1998. She and Sarver took control of Oldfield the following month.

{¶ 7} Groob was unaware that Sapinsley had negotiated with Scheve to purchase Oldfield. In March 1999, Groob learned that Sapinsley and Sarver had become Oldfield's owners when he saw Scheve's obituary in the Kentucky Enquirer.

{¶ 8} Groob, his wife, and Bowie filed a complaint against Sapinsley and KeyBank, alleging, among other things, tortious interference with prospective economic advantage, breach of fiduciary duty, and negligence. With respect to KeyBank, a directed verdict was entered at trial in its favor on the claims for breach of fiduciary duty and negligence. A jury returned a verdict for KeyBank on the remaining tortious-interference claim based on the theory of respondeat superior. The jury also found Sapinsley liable and awarded appellees $556,020 in damages.[1]

---

1. Jeffrey Groob was awarded $50,000 in compensatory damages and $253,000 in punitive damages. Bowie received an award of $20 in compensatory damages and $253,000 in punitive damages.

{¶ 9} Bowie and the Groobs appealed the trial court's decision. They argued, among other things, that the court erred in directing a verdict in favor of KeyBank on their claim for breach of fiduciary duty and that the trial court's jury instructions on respondeat superior were incorrect. The First District Court of Appeals held that KeyBank owed Groob and Bowie a duty of confidentiality and that therefore the trial court had erred when it granted a directed verdict to KeyBank on the claim for breach of fiduciary duty. The appellate court also determined that the trial court's jury instruction on respondeat superior was inadequate because it failed to advise the jury that KeyBank could be held liable if Sapinsley had been aided in her tortious conduct by her status as a KeyBank loan officer.

{¶ 10} We accepted KeyBank's appeal, which argues the following propositions of law:

{¶ 11} "I.   An employer is not liable for the intentional torts of its employee committed outside the scope of employment where the behavior giving rise to the tort is not calculated to facilitate or promote the business for which the employee was employed, but instead is merely the independent, self-serving act of the employee."

{¶ 12} "II.   A lending institution does not owe a fiduciary duty to prospective commercial borrowers in the absence of an agreement to the contrary."

{¶ 13} We will address KeyBank's propositions of law in reverse order.

## Standard for Directed Verdicts

{¶ 14} The trial court directed a verdict in favor of KeyBank on the claim for breach of fiduciary duty. According to Civ.R. 50(A)(4), a motion for directed verdict should be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." In *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4, we noted, " 'A motion for directed verdict * * * does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.' *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph three of the syllabus. See, also, *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252. Since we are presented with a question of law, we apply a de novo standard of review. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889, 891."

## Fiduciary Duty Owed to Prospective Borrower

{¶ 15} KeyBank argues that for the first time in Ohio, the appellate court has imposed a fiduciary duty upon banks based on a special duty of confidentiality

owed by banks to their prospective borrowers. KeyBank contends that this new duty is contrary to Ohio's existing law and is not necessary to protect prospective borrowers.

{¶ 16} The term "fiduciary relationship" has been defined as a relationship "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Emp. of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 321 N.E.2d 603. Similarly, "fiduciary" has been defined as " ' "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." ' " (Emphasis deleted.) *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235, quoting *Haluka v. Baker* (1941), 66 Ohio App. 308, 312, 20 O.O. 136, 34 N.E.2d 68, quoting 1 Restatement of the Law, Agency (1933), Section 13, Comment *a*.

{¶ 17} In the past, we determined that a debtor-and-creditor relationship does not generally create a fiduciary relationship. *Umbaugh Pole Bldg. Co., Inc. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320, paragraph one of the syllabus. When both parties understand that a special trust or confidence has been reposed, however, a fiduciary relationship may be established. Id. In *Umbaugh*, this court held that a fiduciary relationship had not been created between a married couple, Lelland and Vivian Scott, and their credit association. In applying for a loan to expand their hog farm, the Scotts were required to give financial information and information pertaining to their farm operations. The Scotts were given several loans, and the association took a security interest in the hogs and farm equipment and obtained a mortgage on the Scotts' real estate. During the loan period, the association gave advice to the Scotts concerning their farming operation. When the Scotts became delinquent, the association suggested that they liquidate some of their assets so that they could retain their home and a scaled-down farming operation. The Scotts followed the association's suggestion. When another creditor filed for foreclosure, the Scotts sued the association and alleged, among other claims, that the association had breached its fiduciary duty.

{¶ 18} In rejecting the claim for breach of fiduciary duty, the *Umbaugh* court stated, "While the advice was given in a congenial atmosphere and in a sincere effort to help the Scotts prosper, nevertheless, the advice was given by an institutional lender in a commercial context in which the parties dealt at arms length, each protecting his own interest." Id. at 287, 12 O.O.3d 279, 390 N.E.2d 320. The court held that the limited amount of advice "did not vitiate the business relationship because neither party had, nor could have had, a reasonable

expectation that the creditor would act solely or primarily on behalf of the debtor." Id.

{¶ 19} The issue of whether a fiduciary relationship exists between a bank and a borrower was again presented to this court in *Stone v. Davis* (1981), 66 Ohio St.2d 74, 20 O.O.3d 64, 419 N.E.2d 1094. The borrowers in that case, Danny and Judy Davis, financed a dairy farm in large part with a bank loan. After the loan was approved, the Davises signed a disclosure form provided by the bank that indicated that they wanted mortgage insurance. The bank, however, did not take any steps to procure the mortgage insurance or tell the Davises that they had to obtain it themselves.

{¶ 20} This court observed that "while a bank and its customers may be said to stand at arm's length in negotiating the terms and conditions of a mortgage loan, it is unrealistic to believe that this equality of position carries over into the area of loan processing, which customarily includes advising the customer as to the benefits of procuring mortgage insurance on the property which secures the bank's loan." Id. at 78–79, 20 O.O.3d 64, 419 N.E.2d 1094. Thus, because the bank had mentioned mortgage insurance and received the Davises' express desire for that insurance, we held that a special trust or confidence had been placed in the bank to advise the Davises on how to obtain the insurance. Id. at 79, 20 O.O.3d 64, 419 N.E.2d 1094. This court held that the bank had breached its fiduciary duty in failing to either obtain the insurance or tell the Davises that they needed to procure the mortgage insurance themselves.

{¶ 21} In *Blon v. Bank One, Akron, N.A.* (1988), 35 Ohio St.3d 98, 519 N.E.2d 363, Geraldine and Richard Blon bought a car from West Chevrolet, Inc., financed by Bank One. The Blons later learned that the car dealership had received a fee from Bank One for preparing and placing the loan with the bank. This fee was based on the loan's interest rate—the higher the interest rate, the higher the fee. We held that there was no special relationship of trust and confidence between the bank and its borrowers and thus Bank One did not have a duty to disclose the fee arrangement or that lower interest rates were available. We distinguished *Stone*, noting that *Stone* had "expressly distinguished the area of *loan processing*, in which the fiduciary duty was held to arise, from the negotiation of the terms and conditions of a mortgage loan in which the bank and its customer engaged in an arm's-length transaction." *Blon*, 35 Ohio St.3d at 102, 519 N.E.2d 363. "[A] creditor and consumer stand at arm's-length in negotiating the terms and conditions of a consumer loan and, absent an understanding by both parties that a special trust and confidence has been reposed in the creditor, the creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger." Id.

{¶ 22} From *Umbaugh, Stone,* and *Blon,* it is clear that a fiduciary duty does not arise between a bank and a prospective borrower unless there are special circumstances. The General Assembly codified this principle in R.C. 1109.15(D), which states, "Unless otherwise expressly agreed in writing, the relationship between a bank and its obligor, with respect to any extension of credit, is that of a creditor and debtor, and creates no fiduciary duty or other relationship between the parties." Appellees never submitted a formal loan application and did not enter into any written agreements with KeyBank. They were not obligors of the bank. Even if they had been, however, under R.C. 1109.15(D), there would have been no fiduciary duty.

{¶ 23} Appellees, nonetheless, contend that this court should hold that a special, limited duty of confidentiality created between a prospective borrower and a bank gives rise to a fiduciary duty. Appellees argue that such a holding would protect prospective borrowers in the event that the bank or its employees used the applicant's confidential information for the bank's or the employee's benefit. Appellees argue that prospective borrowers place a special trust in banks by providing banks with confidential information and as a result of this special trust, banks occupy a superior position in the relationship.

{¶ 24} Essentially, appellees ask this court to impose a fiduciary duty on a bank whenever it receives confidential information from a prospective customer. We decline to do so.

{¶ 25} Appellees confuse the duty of confidentiality with fiduciary duty. A breach of a duty of confidentiality is separate and distinct from a breach of fiduciary duty. A bank's committing to keep a customer's information confidential does not create an obligation to act only in its customer's best interest, even to its own detriment, which is what a fiduciary relationship requires. If we were to hold that a special trust (fiduciary duty) is created whenever a bank receives confidential information from a potential customer, then nearly every transaction with a bank would give rise to a fiduciary duty. Such a holding would abrogate the holdings in *Umbaugh* and *Blon.*

{¶ 26} A bank does not owe a fiduciary duty to a prospective borrower unless it is aware of a *special* repose or trust. There was nothing special about appellees' request for a loan that would have created a fiduciary relationship. The requirement that Groob provide the terms of the deal for which the loan was sought was not unusual. Although Groob and Bowie both testified that they placed a special trust or repose in KeyBank, they also testified extensively about their personal business experience. During Groob and Bowie's meeting with Sapinsley, the parties were dealing at arm's length, looking out for their own best interests. Sapinsley's alleged statement that appellees had found "the goose that laid the golden egg" is not evidence of a special relationship. There is also no

indication that the loan was wrongfully denied.[2]   Nothing in the record indicates that the parties engaged in anything but arm's-length negotiations.

{¶ 27} We do not find persuasive either of the two non-Ohio cases relied upon by the appellate court to find a special duty of confidentiality.   In *Pigg v. Robertson* (Mo.App.1977), 549 S.W.2d 597, a Missouri court found that a confidential relationship existed when Joseph Pigg went to a bank for a loan to purchase certain real estate.   Pigg asked to speak to the bank president, with whom Pigg had previously dealt in obtaining a loan.   A teller told Pigg that the president was out of town but that he could talk to Mr. Robertson, who was sitting at the president's desk.   Unbeknownst to Pigg, Robertson was not an employee of the bank, but was there to conduct an audit.   Robertson told Pigg that his proposed collateral was probably insufficient and that he should come back later in the week when the bank president returned.   That same day, Robertson purchased the property himself.

{¶ 28} This case is distinguishable.   In *Pigg*, the bank was not named as a defendant and Pigg's claim was for breach of confidential relationship.   Also, Robertson's position was superior to Pigg's, for Pigg did not know that Robertson was not a bank employee.   Unlike Pigg, Groob and Bowie possessed equal bargaining power with KeyBank and were dealing with KeyBank at arm's length.

{¶ 29} In *Djowharzadeh v. City Natl. Bank & Trust Co. of Norman* (Okla.App. 1982), 646 P.2d 616, a bank president's wife and the wife of the bank's senior vice-president, who was also chairman of the board of directors, purchased property that a loan applicant had disclosed an interest in purchasing.   Both wives were stockholders of the bank and had learned about the property from the loan officer who had rejected the application.   The appellate court overturned a summary judgment in favor of the bank, finding that material issues of fact existed.   The bank's stockholders, officers, and directors benefited directly and indirectly from the transaction, the bank had no official policy for safeguarding customer information, and in fact, the bank's policy required employees to inform bank insiders of prime investment opportunities.   None of those circumstances exists in this case.

{¶ 30} We hold that when a bank and a prospective borrower are dealing at arm's length, a fiduciary duty does not exist unless special circumstances exist. Because we have determined that KeyBank did not owe a fiduciary duty to appellees, the trial court properly granted a directed verdict in favor of KeyBank on appellees' claim for breach of a fiduciary duty.

---

2. Appellees did not offer to put any cash toward the purchase of Oldfield.   Witnesses from KeyBank and one witness employed by Fifth Third Bank testified that banks typically require that borrowers have some cash to put down on the business for which they are seeking financing. Sapinsley's denial of the loan, therefore, was in the bank's interests.

### Jury Instruction on Respondeat Superior

{¶ 31} The appellate court determined that the trial court failed to properly instruct the jury on the issue of respondeat superior. It held that a respondeat superior instruction must include language that an employer can be held liable even if the tort was committed outside the scope of her employment, if the employee was aided in accomplishing the tort by her employment. KeyBank asks this court to reverse that decision and reinstate the jury's verdict in its favor, arguing that the trial court's instruction on respondeat superior was correct.

{¶ 32} A trial court must give jury instructions that correctly and completely state the law. *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219, citing *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 482 N.E.2d 583. An inadequate jury instruction that misleads the jury constitutes reversible error. Id.

{¶ 33} The only claim against KeyBank that went to the jury was a claim for intentional interference with a business relationship, based on a theory of respondeat superior. The trial court instructed the jury as follows:

{¶ 34} "I want to talk to you [a] little bit about the responsibility of KeyBank. If you find that plaintiffs have proved by a preponderance of the evidence that defendant Carol Sapinsley has wrongly interfered with a business relationship between plaintiffs and John Scheve you must then consider whether KeyBank is responsible for her conduct.

{¶ 35} "You may find KeyBank responsible only if plaintiffs have proven by a preponderance of the evidence that the acts of Carol Sapinsley in wrongfully interfering with the business relationship between plaintiffs and Scheve was within her scope of employment with KeyBank.

{¶ 36} "An employer is liable for damages caused by its employee while acting within the scope of employment. The key elements for you to consider are: Carol Sapinsley was an employee of KeyBank; the acts that plaintiffs claim caused them damages was done by Carol Sapinsley within the scope of her employment; and her acts were a proximate or direct cause of plaintiffs' damages.

{¶ 37} "A person is an employee of a corporation when the corporation has the right to control what the employee shall do and how she shall do it.

{¶ 38} "An employer is not liable for damages to a third party caused by the act or acts of an employee performed intentionally and solely for the employee's own purposes which in no way facilitate or promote the employer's business.

{¶ 39} "You may find the employer liable if you find by the greater weight of the evidence that the intentional act was done wholly or in part for the benefit of the employer and not solely for the employee's own benefit."

{¶ 40} Appellees had proposed an instruction that included the following language: "If you find that Carol Sapinsley was not acting within the scope of her employment in turning down the loan to Jeff Groob and Lowell Bowie and buying Oldfield, you must consider whether she was aided in her wrongful interference by her status as a loan officer at KeyBank. If you find she was aided in her wrongful interference by her status as a loan officer at KeyBank[,] then you must find for the Plaintiffs and against Defendant KeyBank."

{¶ 41} Appellees argue that the trial court's instruction was erroneous because an employer can be liable for the intentional act of an employee even if the employee's act does not facilitate or promote the employer's business. They contend that when an employee acts with apparent authority, the employer is liable under the doctrine of respondeat superior.

{¶ 42} We hold that the instructions given by the trial court are a correct and complete statement of the law as it applies to this case. "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.'" *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, quoting *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, 132. *Byrd* also noted, "As we held in *Vrabel v. Acri* (1952), 156 Ohio St. 467, 474, 46 O.O 387, 390, 103 N.E.2d 564, 568, 'an intentional and wilful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefore.' See, also, *Schulman v. Cleveland* (1972), 30 Ohio St.2d 196, 59 O.O.2d 196, 283 N.E.2d 175. In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd,* 57 Ohio St.3d at 59, 565 N.E.2d 584.

{¶ 43} In this case, the jury determined that Sapinsley had intentionally interfered with Groob's and Bowie's business relations. Thus, for the jury to find KeyBank liable for Sapinsley's act, the jury would have to find that the act was calculated to facilitate or promote KeyBank's business. See *Byrd*.

{¶ 44} The trial court's jury instruction on respondeat superior adequately covered these principles. The appellate court, however, determined that the jury instruction was insufficient because it did not incorporate an exception for "when the agent's misconduct is not a result of unrelated intentional conduct—that is,

when the agent's position enables her to commit the tort." *Groob,* 155 Ohio App.3d 510, 2003-Ohio-6915, 801 N.E.2d 919, ¶ 32.

{¶ 45} In defining this exception, the appellate court combined Sections 261 and 219(2) of the Restatement of the Law 2d, Agency (1958). Section 261 provides, "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." Id. at 570.

{¶ 46} Comment *a* to Section 261 states, "The principal is subject to liability under the rule stated in this Section although he is entirely innocent, has received no benefit from the transaction, and, as stated in Section 262, although the agent acted solely for his own purposes. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him."

{¶ 47} Reliance on Section 261 is inappropriate, however, because under this Restatement section, the principal's being liable is based on the agent's commission of a fraud on a third party. Fraud consists of "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709. Appellees did not allege that Sapinsley committed a fraud or misrepresented a fact to either appellees or Oldfield's owner. They did not allege that she wrongfully or fraudulently turned down appellees' loan request. Sapinsley's tortious conduct was her using appellees' information to take their business opportunity.

{¶ 48} Section 219(2) of the Restatement provides, "A master is not subject to liability for the torts of his servants acting *outside the scope of their employment,* unless:

{¶ 49} "(a) the master intended the conduct or the consequences, or

{¶ 50} "(b) the master was negligent or reckless, or

{¶ 51} "(c) the conduct violated a non-delegable duty of the master, or

{¶ 52} "(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." (Emphasis added.)

{¶ 53} Comment *e* to Section 219 states, "Clause (d) includes primarily situations in which the principal's liability is based upon conduct which is within the apparent authority of a servant, as where one purports to speak for his employer in defaming another or interfering with another's business." Id. at 484–485.

{¶ 54} Employer liability under this section is premised on the employee's act occurring outside the scope of employment. This court has not adopted Section 219(2)(d),[3] and we decline to do so here. We have not previously determined that an employer can be found liable for the acts of its employee committed outside the scope of employment.[4] Thus, we find that a jury instruction based on Restatement Section 219(2)(d) is inappropriate.

{¶ 55} Appellees nonetheless argue that an instruction that Sapinsley was "aided in her wrongful interference by her status as a loan officer at KeyBank" was warranted under an implied- or apparent-authority analysis. In *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 491, 575 N.E.2d 428, we held that an employee who sexually harasses another employee over whom he has supervisory duties may be found to have been acting with apparent authority and, therefore, may be found to have been acting within the scope of employment.

{¶ 56} Under an apparent-authority analysis, the acts of the principal, rather than the agent, must be examined. *Master Consol. Corp. v. BancOhio Natl. Bank* (1991), 61 Ohio St.3d 570, 576–577, 575 N.E.2d 817. For the principal to be liable, the principal's acts must be found to have clothed the agent with apparent authority. Id. There is no evidence that KeyBank represented to appellees that Sapinsley was authorized to use their information for purposes other than reviewing their loan request.

{¶ 57} Thus, appellees' proposed jury instruction that KeyBank is liable if "Sapinsley was aided in her wrongful interference by her status as a loan officer at KeyBank" was not supported by the evidence. Also, the instruction implies

---

3. Although it mentioned Section 219(2)(d) of the Restatement in *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825, *Osborne* did not adopt this Restatement section. Section 219(2)(d) was noted because a Michigan case that the court discussed had expressly relied on it.

4. In *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428, Kerans sued her employer on a theory of respondeat superior after being sexually harassed by her supervisor. This court found that there was a genuine issue of material fact as to whether the supervisor's actions took place within the scope of his employment, and therefore it was not proper to grant summary judgment to the employer on Kerans's claim. Id. at 490–491, 575 N.E.2d 428. *Kerans* further stated that "even if [the supervisor's] activities took place outside the scope of his employment, summary judgment against appellants' claims would not be proper." Id. at 491, 575 N.E.2d 428. The basis for this statement was a Restatement section that imposes liability on employers if they are aware that an employee represents an unreasonable risk of bodily harm to others. 2 Restatement of the Law 2d, Torts (1965) 125, Section 317. Because this case does not involve any risk of bodily injury, *Kerans* is inapplicable.

that the jury could find KeyBank liable even if Sapinsley was not acting within the scope of her employment when she committed the tort. We hold that the trial court's instruction was a complete and accurate statement of Ohio law and reinstate the jury's verdict in favor of KeyBank.

## Conclusion

{¶ 58} We hold that, unless there are special circumstances, a bank does not have a fiduciary duty to a prospective borrower. We also hold that an employer is not liable under a theory of respondeat superior unless its employee is acting within the scope of her employment when committing a tort—merely being aided by her employment status is not enough.

{¶ 59} For the foregoing reasons, the judgment of the court of appeals is reversed, and the jury's verdict in favor of KeyBank is reinstated.

Judgment reversed.

MOYER, C.J., O'CONNOR and O'DONNELL, JJ., concur.

FARMER, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting for RESNICK, J.

---

**PFEIFER, J., dissenting.**

{¶ 60} I agree that this court heretofore has not explicitly held that financial institutions owe a duty of confidentiality to customers. We have not had to. Most customers would be surprised to learn that such a duty does not already exist, and most banks necessarily behave as if one does. The outrageous facts of this case, however, require us to formally recognize the limited fiduciary duty of a financial institution to keep confidential the sensitive information provided to it by customers and potential customers. Since the majority declines to acknowledge such a duty, I dissent.

{¶ 61} This court has properly held in the past that a debtor-creditor relationship does not generally create a fiduciary relationship. *Umbaugh Pole Bldg. Co., Inc. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320, paragraph one of the syllabus; see, also, R.C. 1109.15(D). As the majority points out, a fiduciary duty can be quite broad when a fiduciary is defined as " ' "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." ' " (Emphasis deleted.) *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235, quoting *Haluka v. Baker* (1941), 66 Ohio App. 308, 312, 20 O.O. 136, 34 N.E.2d 68, quoting 1 Restatement of the Law, Agency (1933), Section 13, Comment *a*. The full breadth of a fiduciary duty is not appropriate when parties are engaged in a

business transaction in which each is operating according to his own best interests. A lender cannot be expected to serve only the interests of its customers when the relationship exists in the first place because it is advantageous to the bank.

{¶ 62} But this court has also defined a fiduciary relationship as a relationship "in which special confidence and trust [are] reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *In re Termination of Emp. of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 321 N.E.2d 603. This definition of a fiduciary relationship gives rise to special, limited duties with regard to certain aspects of business relationships. In *Stone v. Davis* (1981), 66 Ohio St.2d 74, 20 O.O.3d 64, 419 N.E.2d 1094, this court recognized a limited duty between a lender and a loan applicant, holding that the lender owes loan applicants who request mortgage insurance the duty to inform the applicants how to obtain mortgage insurance. In *Stone*, the loan applicant, in response to a query on the bank's own loan documents, indicated that he wished to procure mortgage insurance. The court held that "in broaching the subject of mortgage insurance to a loan customer, a lending institution has a duty to advise the customer as to how this insurance may be procured." Id. at 80, 20 O.O.3d 64, 419 N.E.2d 1094. The court found that "[a] fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed." Id. at 78, 20 O.O.3d 64, 419 N.E.2d 1094.

{¶ 63} Quoting *Pratt*, the court in *Stone* wrote that a fiduciary duty arises where " 'special confidence and trust [are] reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " Id., quoting *Pratt*, 40 Ohio St.2d at 115, 69 O.O.2d 512, 321 N.E.2d 603. The bank's superior position in relation to the customer as to the procurement of mortgage insurance gave rise to a limited duty. The court relied on the fact that "while a bank and its customer may be said to stand at arm's length in negotiating the terms and conditions of a mortgage loan, it is unrealistic to believe that this equality of position carries over into the area of loan processing, which customarily includes advising the customer as to the benefits of procuring mortgage insurance on the property which secures the bank's loan." *Stone*, 66 Ohio St.2d at 78–79, 20 O.O.3d 64, 419 N.E.2d 1094.

{¶ 64} A special trust and an inequality of position also exist in this case and should give rise to a limited fiduciary duty of confidentiality on the part of the bank. To be given consideration by a loan officer, a prospective borrower must be willing to surrender all manner of sensitive information. Just saying, "Trust me, I've got a good idea," is not going to cut it. In releasing his information, the customer puts a special trust in the bank. A customer does not disclose all the

information necessary for the bank to make the judgment on a loan application without being confident that the bank's employees will not peddle the information up and down Main Street.

{¶ 65} The bank is an information gatherer at the outset of the relationship, while the potential borrower receives only the opportunity to be heard. The relative positions of the parties are at their most unequal at that point, with the bank in the superior position. The special trust reposed in the bank and the bank's resulting position of superiority should give rise to a limited fiduciary duty in the bank to keep the borrower's sensitive information confidential.

{¶ 66} To find a limited fiduciary duty as to confidentiality would not change the practices of most banks, but would simply function as an affirmation of their existing policies. The system currently works because customers have faith in the confidentiality of their disclosures. The majority opinion throws that into doubt. To find that there is no duty is to jeopardize a public trust. In a time when financial information and identity can be corrupted and used in a growing number of nefarious ways, it inures to no one's best interest to place in doubt the duty of financial institutions to be trustworthy holders of confidential, sensitive information.

FARMER and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

————————

Waite, Schneider, Bayless & Chesley, Stanley M. Chesley, and Paul M. DeMarco; and Robert F. Croskery and Melinda E. Knisley, for appellees.

Thompson Hine, L.L.P., William C. Wilkinson, Brian J. Lamb, and Timothy H. Linville, for appellants.

Kisor & Winkler, L.L.C., and John C. Deal; and Jeffrey D. Quayle, urging reversal for amicus curiae, Ohio Bankers League.