[Cite as *S.S. v. Ruddock*, 2014-Ohio-2270.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100281**

# S.S.

### PLAINTIFF-APPELLANT

vs.

# MARTIN RUDDOCK

### DEFENDANT-APPELLEE

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-750534

**BEFORE:** S. Gallagher, P.J., Rocco, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 29, 2014

**ATTORNEYS FOR APPELLANT**

Alec Berezin
Patrick J. Perotti
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH   44077

Denise Mackura
1338 Avondale Road
South Euclid, OH   44121


**ATTORNEYS FOR APPELLEE**

Edward E. Taber
Karen E. Ross
Tucker Ellis L.L.P.
950 Main Avenue
Suite 1100
Cleveland, OH   44113

SEAN C. GALLAGHER, P.J.:

{¶1} Plaintiff-appellant S.S.[1] appeals the decision of the Cuyahoga County Court of Common Pleas that granted defendant-appellee Martin Ruddock, M.D.'s motion for partial summary judgment and dismissed the complaint with prejudice. For the reasons stated herein, we reverse the trial court's decision and remand the case for further proceedings.

{¶2} In March 2010, appellant, who is from West Virginia, traveled to Ohio to receive an abortion. She went to Dr. Ruddock at the Center for Women's Health, Inc., in Cleveland. Appellant was in her second trimester of pregnancy. She was accompanied by her mother.

{¶3} Dr. Ruddock first saw appellant on March 16, 2010. On that date, appellant signed six informed-consent forms at Dr. Ruddock's office. Appellant claims she signed these forms prior to ever seeing Dr. Ruddock and that required counseling was not provided 24 hours in advance of the abortion procedure. Appellant was informed that because of her stage of pregnancy, Dr. Ruddock would have to first place dilators, known as laminaria, into her cervix during the first two days, and that the abortion would not be completed until the third day, which would have been March 18, 2010.

{¶4} On March 16, 2010, Dr. Ruddock examined appellant and placed three laminaria into her cervix. During the procedure, appellant experienced pain and uncertainty. She indicated that she wanted to stop. Dr. Ruddock informed her that it

---

[1] Because of the nature of the action, appellant is identified by initials only.

was not possible. According to appellant, Dr. Ruddock informed her that her water had already broken; that he could not stop; that she could not revoke consent once the procedure had begun; and that if the procedure were stopped, the child would suffer from mental retardation. The procedure continued, and the laminaria were inserted. An abortion procedure report was used to document the procedure.

{¶5} The next day, appellant went to another doctor who removed the laminaria and informed her that her water had not been broken. On March 18, 2010, appellant returned to Dr. Ruddock's office and was given a refund after signing a "laminaria removal release." Appellant's pregnancy resulted in the birth of a healthy baby.

{¶6} Appellant filed this action on May 9, 2011, raising claims for violation of Ohio's informed consent law, R.C. 2317.56, and violation of R.C. 3701.74 for failing to provide medical records in accordance with R.C. 3701.741. In her first amended complaint, appellant added a claim for fraud and misrepresentation. Appellant later filed a second amended complaint, without seeking leave of court, in which she added a claim for spoliation based upon alleged alteration of evidence.

{¶7} Dr. Ruddock filed an amended answer to the first amended complaint and a counterclaim, claiming breach of contract arising from the signed release agreement. On October 7, 2011, he filed a motion for partial summary judgment that requested the dismissal of all of appellant's claims. Dr. Ruddock argued that the claims were barred by the release and that the claims failed upon the merits. He later filed a notice of correction in which he clarified that his motion for partial summary judgment was based

on the typewritten language of the release. This clarification occurred because Dr. Ruddock had submitted a copy of the release that had additional handwritten language that purported to prohibit appellant from bringing any legal action whatsoever. Appellant claimed this was an altered copy and that the actual release she signed did not contain the handwritten language that was added to the document submitted by Dr. Ruddock.

{¶8} In ruling on the motion, the trial court only considered the undisputed language of the release signed by appellant that provides "under no circumstances will [appellant] * * * hold Dr. Martin D. Ruddock, MD * * * responsible for anything whatsoever, regarding my health or the outcome of this pregnancy * * *." The court determined that this language was not unclear or ambiguous and that appellant breached the agreement by bringing this action. The trial court granted Dr. Ruddock's motion and dismissed the complaint and all claims raised therein with prejudice. The trial court's ruling included "no just reason for delay" language.

{¶9} Appellant timely filed this appeal from the trial court's decision. Her sole assignment of error claims the trial court erred by dismissing the complaint in its entirety based on an inapplicable limited laminaria release. We agree.

{¶10} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and

(3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party." *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7.

**{¶11}** A release is reviewed under the rules governing the construction of contracts. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 637, 1992-Ohio-28, 597 N.E.2d 499. A court must examine a contract as a whole, and it is presumed that the intent of the parties resides in the language employed in the agreement. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37. Where a contract is clear and unambiguous, its interpretation is a question of law. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 65, 1993-Ohio-195, 609 N.E.2d 144. Further, where there is any doubt or ambiguity in the language of the release agreement, it will be strictly construed against the drafter of the document. *Knickel v. Marion*, 3d Dist. Marion No. 9-2000-75, 2001-Ohio-2127, citing *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 80, 228 N.E.2d 304 (1967).

**{¶12}** Initially, we find the contention of a dispute surrounding the altered release language to be no more than a red herring. As already discussed, Dr. Ruddock clarified that he was relying upon the typewritten release language and the court only considered the undisputed language of the release when ruling upon summary judgment. Likewise, upon our review, we only consider the typewritten release.

**{¶13}** The release was captioned "laminaria removal release" and related to appellant's decision to have the laminaria removed. The release provides that on March

18, 2010, appellant was informed of the possible consequences of interrupting the process initiated by Dr. Ruddock for a second trimester abortion. The release lists possible negative consequences of the laminaria removal and indicates that the removal was against the sound medical advice of Dr. Ruddock. The release contains an acknowledgment by appellant that she would be solely responsible "for any/all possible outcomes regarding my health and that of my developing fetus." Appellant further acknowledged that "under no circumstances, will [appellant] * * * hold Dr. Martin D. Ruddock, MD, the Center for Women's Health responsible for anything whatsoever, regarding my health or the outcome of this pregnancy."

{¶14} We find the release is clear and unambiguous. In examining the language of the release as a whole, it is apparent that the release pertains to the risks associated with the laminaria removal, appellant's acceptance of responsibility for any and all outcomes regarding her health and that of her fetus, and a release of liability against Dr. Ruddock for claims regarding her health or the outcome of her pregnancy. The release does not manifest an intent to release Dr. Ruddock from liability concerning violations of Ohio's informed consent law, medical record release laws, fraud and misrepresentation claims regarding the pregnancy itself, or spoliation of evidence claims. Arguably, a release of Ohio's informed consent laws would be against public policy. Further, the events giving rise to the medical records and spoliation claims arose after the release was entered. Accordingly, we find the trial court erred by applying the release to preclude

appellant's claims and by finding appellant had breached the agreement by filing this action.

{¶15} In his motion for partial summary judgment, Dr. Ruddock also argued against the merits of the claims. We shall address each claim separately.

{¶16} R.C. 2317.56 sets forth information that is to be provided to a woman "prior to an abortion." The statute instructs that "an abortion shall be performed or induced" only if certain conditions are satisfied. R.C. 2317.56(B). The conditions include that at least 24 hours prior to the procedure, a physician meet with the pregnant woman in person and provide certain disclosures regarding the nature of the procedure and associated risks, the probable gestational age of the fetus, and the risks of carrying the pregnancy to term. R.C. 2317.56(B)(1). The statute also requires published materials about the procedure be given to the woman. R.C. 2317.56(B)(2)(b). Also, the woman must give written consent prior to the performance or inducement of the abortion. R.C. 2317.56(B)(4). A person who fails to comply with the required conditions may be liable for compensatory and exemplary damages and may be subject to disciplinary action under R.C. 4731.22. R.C. 2317.56(G).

{¶17} Dr. Ruddock claims that the consent forms signed by appellant demonstrate that he complied with Ohio's informed consent laws. However, appellant states in her affidavit that she was instructed to sign these forms before ever meeting with Dr. Ruddock and she was not given proper counseling, the state-mandated materials, or a 24-hour waiting period. Although Dr. Ruddock claims that appellant had already

received the requisite informed consent information in West Virginia, this is not clearly ascertainable from the record and is a disputed fact.

{¶18} Dr. Ruddock also asserts that appellant did not have an abortion because she delivered a healthy baby. That the procedure did not result in the termination of the pregnancy is not dispositive of the claim. R.C. 2317.56 requires that informed consent be obtained prior to an abortion being performed or induced. There is evidence in the record that reflects Dr. Ruddock performed or induced an abortion procedure on appellant. Appellant was informed of a three-day process relating to the abortion. As Dr. Ruddock states, on March 16, 2010, he had to "place dilators into [appellant's] cervix to prepare her body for the abortion." Once this procedure was initiated, and after appellant requested it stop, Dr. Ruddock informed her it was not possible. An "abortion procedure report" documented the procedure performed as a "second trimester abortion (dilation & extraction – D&E); suction."

{¶19} Because there are genuine issues of material fact in dispute on the claim of lack of informed consent, summary judgment was not proper thereon.

{¶20} Appellant also raised a claim for fraud and misrepresentation. The elements of this claim include the following:

> "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*Groob v. Keybank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 47, quoting *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

**{¶21}** Appellant claims that Dr. Ruddock failed to provide all relevant information prior to initiating the abortion procedure and made false statements during the abortion procedure. She alleges Dr. Ruddock made numerous false statements, including that it was too late to stop the abortion; that her water had already broken; that she could not revoke her consent once the procedure had begun; and that if she stopped, her child would be mentally retarded. Appellant states she relied on these statements and continued to endure a painful and frightening procedure that included the installation of the laminaria. Although Dr. Ruddock argues appellant did not suffer an injury because she did not have an abortion, appellant presented evidence, by way of her affidavit, of pain and stress to her person caused by the procedure that was performed. We find summary judgment is not warranted on this claim because there are genuine issues of material fact in dispute.

**{¶22}** Next, we address the claim for failure to provide medical records. R.C. 3701.74 authorizes a civil action to enforce a patient's right of access to medical records. Under her claim, appellant asserts that despite repeated written requests and the passage of reasonable time, Dr. Ruddock failed to provide her medical records. Dr. Ruddock argues that the claim is baseless because the medical records were provided in early 2011. However, this was after the lawsuit was filed and ignores the cost of counsel in pursuing the claim. Further, appellant was unable to review the records in contemplation of the

action and should not have been obligated to file a lawsuit to obtain her medical records. We find the claim for failure to provide medical records was improperly dismissed by the trial court.

{¶23} Finally, we address the claim for spoliation. This claim is based on Dr. Ruddock's alleged alteration of the release. Dr. Ruddock argues that the spoliation claim was raised in the second amended complaint, which was filed without leave of court. Therefore, he asserts that the second amended complaint should be stricken and the claim disregarded.

{¶24} Our review reflects that the filing of the second amended complaint without leave was not challenged by Dr. Ruddock in the trial court and no objection was raised to the trial court's recognition of the spoliation claim in its ruling on the motion for summary judgment. The failure to raise this issue before the trial court constitutes a waiver, and we may disregard the argument on appeal. *See State v. Douglas*, 66 Ohio St.3d 788, 790, 586 N.E.2d 1096 (1989). Because the release does not bar the spoliation claim, the trial court erred in dismissing this claim.

{¶25} We conclude Dr. Ruddock's motion for partial summary judgment should have been denied, and we reverse the trial court's decision. Appellant's sole assignment of error is sustained.

{¶26} Judgment reversed; case remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN T. GALLAGHER, J., CONCUR