[Cite as *Gang v. RE/MAX Champions Real Estate, Inc.*, 2014-Ohio-4656.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JUDY GANG, ET AL., | : | JUDGES: |
| | : | |
| Plaintiffs - Appellees | : | Hon. William B. Hoffman |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RE/MAX CHAMPIONS REAL ESTATE, INC, | : | Case No. 14-CA-08 |
| ET AL., | : | |
| | : | |
| Defendants - Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:   Civil Appeal from the Fairfield
County Court of Common Pleas,
Case No. 2012 CV 861


JUDGMENT:   Affirmed


DATE OF JUDGMENT:   October 20, 2014


APPEARANCES:

For Plaintiff-Appellee Scott Marvin          For Defendants-Appellants

CHARLEY HESS                                 D. JOE GRIFFITH
7211 Sawmill Road, Suite 200                 Dagger, Johnston, Miller, Ogilvie
Dublin, OH 43016                             & Hampson, LLP
                                             144 E. Main Street, PO Box 667
                                             Lancaster, OH 43130

*Baldwin, J.*

{¶1}    Appellants RE/MAX Champions Real Estate, Inc., and Champions Realty Co., Inc. (hereinafter "Champions") appeal a judgment of the Fairfield County Common Pleas Court awarding appellee Scott Marvin damages in the amount of $68,000.00 for breach of contract.[1]

STATEMENT OF FACTS AND CASE

{¶2}    Appellee obtained his license to sell real estate on September 11, 2001. Initially he was affiliated with HER Realty, but on August 5, 2004, he became affiliated with Champions as an independent contractor.  He operated on a 100% commission basis pursuant to an Independent Contractor Agreement (ICA).  Appellee paid monthly desk fees to Champions in the amount of $3,000.00, which covered the office space that he and his team occupied.  He also paid all expenses of his business, including advertising, and he could use the RE/MAX logo.  The ICA required 60 days of notice of intention to leave the brokerage.  Appellee's business was primarily in the nature of short sales, representing sellers on whom mortgage loans were foreclosed.

{¶3}    On July 15, 2012, appellee returned from vacation and found an email concerning Champions' merger with Howard Hanna.  Because appellee and his partner, Terry Carter, wanted to remain with RE/MAX, appellee intended to resign from Champions.  On July 16, appellee and Carter met with Mike and Sue Allen, owners of Champions, to discuss their future plans.

{¶4}    Appellee resigned on July 17, 2012.  Howard Hanna did not intend to continue with the 100% commission structure.  Appellee also felt that the owners of

---

[1] Judy Gang and Matthew Glanzman were originally plaintiffs in the action, but their cases were settled prior to trial, and they are not parties to this appeal.

Champions were not honest with him or with other agents about the merger. Based on his research of Howard Hanna, he did not want to be affiliated with that agency, and wanted to remain with RE/MAX.

{¶5} On July 18, 2012, appellee had his license transferred to RE/MAX One. Appellee had 65 listings with Champions at the time of his resignation. Several agents had left Champions prior to appellee's resignation due to concerns about the merger with Howard Hanna, and all were permitted to take their listings to their new broker. Appellee expected to take his 65 listings with him to his new brokerage, RE/MAX One. Champions released five of appellee's listings to his new broker, as these listings were in need of immediate attention. Appellee was told that Champions would take care of releasing the remaining 60 listings; however, Champions ultimately refused to release these listings to appellee.

{¶6} Appellee filed the instant action seeking damages for breach of written contract, tortious interference with business relationship, defamation, breach of quasi-contract, quantum meruit, unjust enrichment, breach of oral contract, and promissory estoppel. In addition to monetary damages, appellee sought an accounting and injunctive relief. Champions counterclaimed for breach of contract, tortious interference with business relations and defamation.

{¶7} Appellee's claims for defamation, breach of quasi-contract, quantum meruit, unjust enrichment, breach of oral contract, promissory estoppel, and for an accounting and injunctive relief were dismissed prior to trial. The case proceeded to jury trial on appellee's claims for breach of contract and tortious interference with business relations and on all of Champions claims.

{¶8}    Champions' motion for directed verdict was overruled.  The jury returned a verdict for appellee in the amount of $68,000.00 for breach of contract.  The jury found for appellee on his claim for tortious interference with business relations, but awarded no damages on this claim.  The jury returned a verdict in favor of Champions in the amount of $30,000.00 for breach of contract and $5,000.00 for defamation.  Champions' motion for judgment notwithstanding the verdict was overruled.

{¶9}    Champions assigns a single error to this Court:

{¶10} "TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT/APPELLANT'S MOTION FOR A DIRECTED VERDICT AS TO PLAINTIFF/APPELLEE'S BREACH OF CONTRACT CLAIM."

{¶11} Champions argues that the court erred in failing to direct a verdict because appellee failed to present evidence that Champions was required to release his listings upon his resignation, appellee failed to satisfy the conditions precedent under the contract to trigger Champions' responsibility to release the listings, and appellee failed to present evidence that these conditions precedent were waived by Champions.

{¶12}  A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Groob v. Keybank,* 108 Ohio St.3d 348, 2006–Ohio–1189, 843 N.E.2d 1170. Civil Rule 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of the opponent's evidence, or at the close of all the evidence. Upon receiving the motion, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed. Civil Rule 50(A)(4). If the trial court finds on any

determinative issue that reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in plaintiff's favor. *See Hargrove v. Tanner,* 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist.1990).

{¶13} Section 11(D) of appellee's ICA with Champions provides that upon departure, in order to have listings transferred to a new broker, the agent must: (a) pay all fees due the broker, (b) obtain signed releases of the agent's clients/sellers that releases the broker from further performance under the listing contract, and (c) provide a signed statement by the agent's new broker accepting responsibility for the listing to be transferred.

{¶14} Appellee admittedly did not comply with these conditions. However, the jury found that Champions had waived these conditions. Champions argues that there was insufficient evidence for the jury to consider the issue of waiver, and the court should therefore have entered a directed verdict for Champions on the breach of contract claim.

{¶15} It is a basic principle of contract law that a party to a contract who would benefit from a condition precedent to its performance may waive that condition. *Sweeney v. Grange Mut. Cas. Co.,* 146 Ohio App. 3d 380, 385, 766 N.E.2d 212, 216 (8th Dist. 2001). "A condition precedent is excused if it is waived by the party asserting its existence." *Blommel Sign Corp. of Springfield v. Identity's,* 2nd Dist. Montgomery App. No. 12900, 1992 WL 28152 (Feb. 24, 1992), citing 5 Williston on Contracts (3 Ed. 1961), at 222. When a condition is excused, its nonperformance is no bar to recovery

on the contract. *Id.*, citing Williston on Contracts, *supra*.   A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver.  *Chubb v. Ohio Bur. of Workers' Comp.*  81 Ohio St.3d 275, 279, 690 N.E.2d 1267, 1269-1270 (1998).

{¶16}  Gwen Rader testified that she left Champions in December of 2011. Champions did not object to her taking her listings with her, and a Champions employee physically handled the transfer of the listings for her.  She testified that it is common in the industry to take your listings with you.  She did not give the required notice prior to her departure, and did not pay her desk fees until after she was affiliated with her new broker.  She did obtain the sellers' permission to take the listings from Champions to her new broker, but she did not present Champions with a document signed by her new broker indicating his willingness to accept responsibility for the transferred listings.

{¶17}  Carla Peters testified that she left Champions on January 12, 2012.  She did not give notice, but left the day she resigned.  She paid her remaining desk fees after she left Champions.  She was permitted to take her listings with her to RE/MAX One.

{¶18}  Barbara Russell also left Champions in 2012.  She withdrew her listings from the Multiple Listing Service (MLS), resigned from Champions, and then entered her listings on the MLS with her new broker.  She did not have Champions' permission to withdraw the listings.  When she told Champions she had resigned and transferred her listings, she was told that she owed 60 days of desk fees for failing to provide advance notice of her resignation, and Champions continued to bill her monthly until the desk fees were paid.  However, she was permitted to take her listings with her to her

new agency although she never received written permission from Champions to do so. She testified that it is customary in the real estate world to withdraw your listings without doing transfer forms, regardless of the contract terms.

{¶19} Terry Carter testified that over an eight-year period in which she was affiliated with Champions, agents who left were all allowed to take their listings with them. Appellee testified that in practice, Champions did not require an agent who left to comply with the contract provision requiring the agent to obtain signed releases of the agent's clients/sellers releasing the broker from further performance under the listing contract, or the provision requiring the agent to provide a signed statement by the agent's new broker accepting responsibility for the listing to be transferred.

{¶20} Although appellee did not withdraw his listings from the MLS before resigning from Champions as did most agents who left Champions, viewing the evidence in a light most favorable to appellee, a jury could find that appellee waived the conditions precedent to transferring listings set forth in the contract by allowing agents to leave and take their listings with them, even when they failed to comply with all the conditions precedent to taking such listings.

{¶21} Champions also argues that appellee did not change his position in reliance on the waiver. Appellee testified that when he transferred his license to RE/MAX One, he did not envision any problems taking his listings with him because that is the way it was customarily done. He testified, "They just let agents take their business with them." Tr. 71. Viewed in a light most favorable to the appellee, reasonable minds could find that appellee resigned from Champions prior to the merger

with Howard Hanna relying on Champions practice of allowing agents to transfer their listings regardless of the method used by the agent to accomplish the transfer.

{¶22} The court did not err in failing to direct a verdict on appellee's breach of contract claim. The assignment of error is overruled.

{¶23} The judgment of the Fairfield County Common Pleas Court is affirmed. Costs are assessed to appellants.

By: Baldwin, J.

and Delaney, J. concur.

Hoffman, P.J. dissents

HON. CRAIG R. BALDWIN

HON. WILLIAM B. HOFFMAN

HON. PATRICIA A. DELANEY

CRB/rad

*Hoffman, P.J., dissenting*

{¶24} I respectfully dissent from the majority opinion.

{¶25} None of the other agents who left Champions failed to obtain signed releases of the agent's clients/sellers, which released Champions from further performance. I find this condition precedent arguably the most important one of the three since it affects the broker's duty to the clients/sellers, thereby impacting Champions' possible liability to them. I do not find Champions' past practice of waiving the other two condition precedents supports finding waiver of this particular condition precedent.