[Cite as *Telle v. Pasley*, 2013-Ohio-2407.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| EDWARD E. TELLE AND PEGGY DUPLER | : | JUDGES: |
| | : | |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellants | : | Hon. William B. Hoffman, J. |
| | : | Hon. Sheila G. Farmer, J. |
| -vs- | : | |
| | : | Case No. 12 CAE 08 0048 |
| ROGER PASLEY, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Court of Common Pleas, Case No. 09 CVC 06 793

JUDGMENT:      JUDGMENT AFFIRMED IN PART & REVERSED IN PART; CAUSE REMANDED

DATE OF JUDGMENT ENTRY:      June 6, 2013

APPEARANCES:

For Appellants:

GEOFFREY E. WEBSTER
17 High St., Suite 770
Columbus, OH 43215

For Appellees Pasleys:

TIMOTHY J. RYAN
471 E. Broad St., 19th Floor
Columbus, OH 43215

For Appellee Maplewood Tree Service:

AMY S. THOMAS
175 S. 3rd St., Suite 1000
Columbus, OH 43215

*Delaney, P.J.*

{¶1} Plaintiffs-Appellants Edward R. Telle and Peggy Dupler appeal the July 13, 2012 judgment entry denying Appellants' motion for new trial and the May 24, 2012 judgment entry memorializing the jury verdict awarding Appellants $28,350.00 in damages.

## FACTS AND PROCEDURAL HISTORY

{¶2} Plaintiffs-Appellants Edward R. Telle and Peggy Dupler own property located in Powell, Delaware County, Ohio. Since 2005, Defendants-Appellees Pamela and Roger Pasley owned their property adjacent to the Telle/Dupler property. A row of 18 blue spruce trees, approximately 23 to 30 feet tall, grows between the properties. The trees are located about two feet within the Telle/Dupler property line, and a portion of the circumference of the trees hangs over the Pasleys' property. Prior to 2009, the blue spruce trees acted as a visual screen between the properties, as well as a noise barrier to traffic.

{¶3} On March 26, 2009, the Pasleys and Defendant-Appellee Shane Shirk, d/b/a Maplewood Tree Service, entered into a contract for landscaping services, including the trimming of the 18 blue spruce trees. The contract amount was $2,650.00. The Maplewood employee told Roger Pasley it was necessary to trim the dead wood located in the lower branches of the blue spruce trees to extend the life of the trees. At the time of the contract, the Pasleys believed 16 of the 18 blue spruce trees were on their property. When the Pasleys purchased the property, the real estate agent told them the blue spruce trees were located on their property. The Pasleys mowed the grass around the trees, including sections of the lawn that was

Telle/Dupler property. Telle/Dupler never informed the Pasleys they were on their property when the Pasleys mowed the lawn around the trees.

{¶4} While the written contract between Maplewood and the Pasleys states it included the trimming of 18 trees, Roger Pasley instructed Maplewood to cut only 16 trees. Roger Pasley believed two of the blue spruce trees belonged to another neighbor, but not Telle/Dupler.

{¶5} The Pasleys went out to eat while Maplewood conducted the tree trimming. When the Pasleys returned to their home that evening, they discovered Maplewood had not selectively removed dead branches from the blue spruce trees, but rather removed all the branches to approximately a height of six feet from the ground, exposing the trunks of the blue spruce trees. The Pasleys did not intend Maplewood to remove that many branches. The Pasleys did not confront Maplewood about the tree trimming.

{¶6} Telle and Dupler returned to their home from a trip and saw the blue spruce trees had been limbed up. The trees previously blocked the Pasleys' backyard from their view and the removal of the branches exposed the Pasleys' backyard to their view from their property. Telle confronted Pamela Pasley about the trimming of the spruces, stating the trees were on his property. Roger Pasley presented to Telle, as evidence the trees stood on the Pasleys' property, an aerial photograph Pasley had obtained in connection with on-going eminent domain issues. A later survey, however, confirmed the 18 blue spruce trees, 16 of which were trimmed, were located on the Telle/Dupler property.

{¶7} Telle and Dupler obtained an estimate from EMI Tree Services to replace the natural screening. EMI Tree Services estimated it would take 32, 10 to 12 foot, Colorado Blue Spruce trees planted in staggered double rows to replace the screening lost by the limbing up. The amount of the estimate was $24,800.00. Telle and Dupler hired EMI Tree Services to plant 20 blue spruce trees for $16,813.13.

{¶8} Telle and Dupler filed a Complaint against the Pasleys on June 15, 2009. The Complaint asserted trespass and conversion related to the trimming of the 16 blue spruce trees. Telle and Dupler filed an Amended Complaint on June 18, 2010, asserting claims against the Pasleys and Maplewood for trespass, conversion, and violation of R.C. 901.51. The Pasleys filed an Amended Answer to the Complaint with a Cross-Claim against Maplewood, alleging Appellants' damages, if any, resulted from Maplewood acting outside the scope of its agreement with the Pasleys. Maplewood filed an Amended Answer and Cross-Claim against the Pasleys alleging breach of contract by the Pasleys.

{¶9} The matter proceeded to a trial before a jury on May 8, 2012. The Pasleys and Maplewood stipulated that Maplewood was an agent of the Pasleys and agreed to resolve their respective Cross-Claims by paying the amount of judgment based on the jury's apportionment of fault. The parties also stipulated the Pasleys and Maplewood trespassed without authority upon the Telle/Dupler property.

{¶10} At the close of the Appellants' case in chief, Maplewood and the Pasleys moved for a directed verdict on the issue of damages. Appellees argued the correct measure of damages was restoration costs not in excess of $24,800.00. The trial court found Appellants had not presented any evidence as to the fair market of the

land or diminution of the value of the land. The trial court granted Appellees' motion for direct verdict on that issue and stated the jury could consider restoration costs damages, not to exceed $24,800.00. Separately, Maplewood moved for a directed verdict regarding treble damages under R.C. 901.51 because Appellants failed to present evidence of reckless conduct on the part of Maplewood. However, the trial court stated:

> The Jury can still decide based upon the evidence that the Court heard so far whether or not there was reckless conduct or malicious conduct, those are issues that the Jury is going to have to decide, the Court is prepared to allow those two issues to go the Jury for deliberations. Now my rulings clear?
>
> [Counsel for Pasleys]: Yes.
>
> [Counsel for Maplewood]: Yes.
>
> [Counsel for Telle/Dupler]: I believe so, your Honor.

(T. 355). The trial court journalized the jury's verdict on May 23, 2012 and stated, "At the close of the Plaintiffs case, the Court found insufficient evidence of malice and granted the Defendants a directed verdict, pursuant to Civil Rule 50, upon Plaintiffs' claim for punitive damages and attorney fees."

{¶11} Appellees presented evidence and did not renew a motion for directed verdict at the close of all the evidence.

{¶12} The jury instructions informed the jury the parties stipulated the Appellees trespassed on the Appellants' property. The trial court overruled Appellants' objection to include the definition of trespass in the jury instructions due to

the stipulation. The trial court also included the issue of privilege for the jury's consideration, over Appellants' objection. The jury instructions stated Appellees claimed they were not liable for cutting off the limbs of the trees that hung over the Appellees' property and the privilege should be taken into consideration when calculating damages. The trial court refused to instruct the jury, over the Appellants' objection, on the issue of punitive damages as to Appellees. The trial court also instructed the jury on the issue of recklessness and treble damages under R.C. 901.51 against the Pasleys, but not as to Maplewood.

{¶13} The trial court sent nine interrogatories to the jury. In Interrogatory No. 1, the jury found Appellants were damaged by Appellees' trespass. The jury next found in Interrogatory No. 2, Maplewood was not acting at all times within the scope of its contract with the Pasleys. In Interrogatory No. 3, the jury found 45% of the damages caused to Appellants were caused by Maplewood acting outside its contract.

{¶14} Interrogatory No. 4 calculated the damages due to Appellees' trespass upon Appellants' property. The jury awarded Appellants $24,800.00 in restoration costs. The jury awarded Appellants zero damages for loss of sight screen or loss of sound screen. The jury also awarded Appellants $5,200.00 for loss of enjoyment. In total, the jury awarded Appellants $30,000.00 in compensatory damages.

{¶15} In Interrogatory No. 5, the jury found that based on Maplewood's percentage of liability being 45%, Maplewood was liable for $13,500.00 of the total compensatory damages award.

{¶16} The jury found in Interrogatory No. 6 that the Pasleys acted with privilege in cutting the tree branches. The jury stated in Interrogatory No. 7 the total damages caused by the Pasleys were privileged in the amount of 10%.

{¶17} Interrogatory No. 8 summarized the damages as to the Pasleys. The total compensatory damages award was $30,000.00. The jury subtracted the $13,500.00 damages attributable to Maplewood acting outside of its contract with the Pasleys for a sum of $16,500.00. The jury multiplied $16,500.00 by 10%, the percentage of the damages determined to be privileged by the Pasleys, for a sum of $1,650.00. The jury concluded the Pasleys were liable to Telle and Dupler for $14,850.00.

{¶18} In Interrogatory No. 9, the jury found the actions of the Pasleys in cutting the branches of the trees were not reckless, therefore denying Telle and Dupler treble damages pursuant to R.C. 901.51.

{¶19} The total amount of damages awarded to Telle and Dupler was $28,350.00.

{¶20} Telle and Dupler filed a Motion for New Trial on May 18, 2010. On May 24, 2012, the trial court issued its judgment entry memorializing the jury verdict. The trial court held a hearing on the Motion for New Trial. On July 13, 2012, the trial court denied the Motion for New Trial.

{¶21} It is from these decisions Appellants Telle and Dupler now appeal.

## ASSIGNMENTS OF ERROR

{¶22} Appellants Telle and Dupler raise six Assignments of Error:

{¶23} "I. THE TRIAL COURT ERRED IN PLACING A CAP ON DAMAGES OF RESTORATION COSTS.

{¶24} "II. THE TRIAL COURT ERRED IN CHARGING THE JURY ON PRIVILEGE.

{¶25} "III. THE TRIAL COURT ERRED IN TAKING FROM THE JURY THE DETERMINATION OF WHETHER APPELLEE SHIRK'S CONDUCT WAS RECKLESS.

{¶26} "IV. THE TRIAL COURT ERRED IN REFUSING TO INCLUDE WITHIN THE JURY INSTRUCTIONS, THE DEFINITION OF THE TERM 'TRESPASS.'

{¶27} "V. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE JURY TO CONSIDER PUNITIVE DAMAGES.

{¶28} "VI. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL."

## ANALYSIS

### I.

{¶29} In the first Assignment of Error, Appellants argue the trial court erred in placing a cap on the amount of damages for restoration. Within their argument, however, they state the trial court used the incorrect measure of damages. On both arguments, we disagree the trial court erred.

{¶30} At the close of Appellants' case in chief, Appellees moved for directed verdict on the measure of damages. (T. 348). A trial court's decision on a motion for

directed verdict presents a question of law, which an appellate court reviews de novo. *Groob v. Keybank,* 108 Ohio St.3d 348, 2006–Ohio–1189, 843 N.E.2d 1170, ¶ 14. Civ. R. 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of the opponent's evidence, or at the close of all the evidence. Upon receiving a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed. *See* Civ. R. 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor. *See Hargrove v. Tanner,* 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist.1990).

{¶31} Appellees argued that based on the evidence presented and the law, the correct measure of damages was restoration costs, not the diminution of the property's value as a result of the cutting. The trial court in granting the motion relied upon this Court's decision in *Fronsman v. Risaliti*, 5th Dist. No. 2008CA00028, 2008-Ohio-5074, wherein we held the trial court did not err in using restoration costs as the measure of damages for the destruction of trees and vegetation due to trespass. Our decision was based on the reasoning of *Denoyer v. Lamb*, 22 Ohio App.3d 136, 490 N.E.2d 615 (1st Dist.1984), which held the measure of damage is the cost of reasonable restoration of property to the pre-existing condition or to a condition as close as reasonably feasible without requiring grossly disproportionate expenditures

and with allowance for the natural processes of regeneration within a reasonable period of time.

{¶32} The parties all agreed in this case the trees themselves were irreplaceable. The bottom limbs would never grow back. Appellants presented evidence that they obtained an estimate from EMI Tree Services to replace the natural screening lost due to the cutting. EMI Tree Services estimated it would take 32, 10 to 12 foot, Colorado Blue Spruce trees planted in staggered double rows to replace the screening lost by the limbing up. The amount of the estimate was $24,800.00. Telle and Dupler hired EMI Tree Services to plant 20 blue spruce trees for $16,813.13. Based on this evidence, the trial court utilized restoration costs as the measure of damages and capped the damages at $24,800.00.

{¶33} Interrogatory No. 4 calculated the damages due to Appellees' trespass upon Appellants' property. It allowed the jury to consider restoration costs, damages due to loss of sight screen, loss of sound screen, and loss of enjoyment. The jury awarded Appellants $24,800.00 in restoration costs. The jury awarded Appellants zero damages for loss of sight screen or loss of sound screen. The jury also awarded Appellants $5,200.00 for loss of enjoyment. In total, the jury awarded Appellants $30,000.00 in compensatory damages.

{¶34} Appellants argue the jury should have been permitted to choose the measure of damages as either the diminution of the property's value as a result of the cutting or the restoration costs. Appellants and Appellees presented expert testimony as to the value of the trees before the cutting. As the trial court pointed out, however,

the record contains no evidence that the fair market value of the land was reduced by the cutting of the limbs. (T. 350).

{¶35} Upon our de novo review, we find no error by the trial court to grant Appellees' directed verdict as to the measure of damages based on *Fronsman* and to cap the damages at $24,800.00. The measure of damages conformed to the evidence presented at trial and is supported by law.

{¶36} The first Assignment of Error is overruled.

*II.*

{¶37} Appellants contend in their second Assignment of Error the trial court erred in allowing the issue of privilege to go to the jury. We disagree.

{¶38} Appellants brought their claims against the Pasleys pursuant to trespass and R.C. 901.51. The parties stipulated Appellees trespassed onto Appellants' property, causing damage. R.C. 901.51 provides:

> No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
>
> In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused.

{¶39} The Pasleys argued the issue of privilege should go to the jury solely for its determination of the amount of damages because the evidence showed a portion of the tree branches hung over the Pasleys' property. (T. 467). "A privilege existed at common law, such that a landowner could cut off, server, destroy, mutilate, or

otherwise eliminate branches of an adjoining landowner's tree that encroached on his land." *ALH Properties v. Procare Automotive Service Solutions, LLC*, 9th Dist. No. 10991, 2002-Ohio-4246, ¶ 18 citing *Murray v. Heabron* (C.P. 1947), 74 N.E.2d 648, 35 O.O. 135, 135. Appellants argued that because the parties stipulated that a trespass occurred, the issue of privilege was waived. (T. 467).

{¶40} The trial court allowed the issue of privilege to go to the jury. The jury found in Interrogatory No. 6 that the Pasleys acted with privilege in cutting the tree branches. The jury stated in Interrogatory No. 7 that the total damages caused by the Pasleys were privileged in the amount of 10%. Interrogatory No. 8 summarized the damages as to the Pasleys. The total compensatory damages award was $30,000.00. The jury subtracted the $13,500.00 damages attributable to Maplewood acting outside of its contract with the Pasleys for a result of $16,500.00. The jury multiplied $16,500.00 by 10%, the percentage of the damages determined to be privileged by the Pasleys, for a sum of $1,650.00. The jury concluded the Pasleys were liable to Telle and Dupler for $14,850.00.

{¶41} On appeal, Appellants first argue the record fails to present evidence of privilege. Photographs were admitted into evidence that showed the property line and the location of the trees and their branches in relation to the parties' properties.

{¶42} Appellants next argue the trial court abused its discretion in allowing the issue of privilege to go to the jury and its decision prejudiced Appellants. In general, a court should give party's requested jury instruction if it is a correct statement of the law as applied to the facts of the case. *Murphy v. Carrollton Manufacturing. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991). The determination whether to give a jury

instruction is a matter left to the sound discretion of the trial court. *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). When we review the court's decision whether to give a requested instruction, we must determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. *Feterle v. Huettner*, 28 Ohio St.2d 54, 275 N.E.2d 340 (1971), syllabus. However, whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy* at 591.

{¶43} The jury instructions stated as to privilege as follows:

The Defendants claim that they are not liable to the Plaintiffs for cutting off the limbs from the blue spruce trees which were hanging on the Defendant's property. This is called privilege.

A privilege existed at common law, such that a landowner could cut off, sever, destroy, mutilate, or otherwise eliminate branches of an adjoining landowner's tree that encroached on his land.

Whether the Defendant's properly exercised their privilege and the extent it is excused or justified the Defendants' actions is a question of fact to be determined by the jury. The Defendant has the burden.

**Compensatory Damages**

* * *

In determining the amount of damages to award, the jury must take into consideration whether the Defendants acted with privilege to do so and cannot compensate Plaintiffs for any branches trimmed or cut while acting within that privilege.

{¶44} The jury found in Interrogatory No. 6 that the Pasleys acted with privilege in cutting the tree branches. The jury stated in Interrogatory No. 7 that the total damages caused by the Pasleys were privileged in the amount of 10%.

{¶45} The evidence shows a portion of the branches of the trees encroached upon the Pasleys' property. It is a correct statement of the common law that a privilege exists for the Pasleys to trim the branches that encroached upon their property. In this case, the privilege was not utilized as a defense to trespass, but as a method of calculating damages. Appellants cite to *ALH Properties v. Procare Automotive Service Solutions, LLC*, 9th Dist. No. 10991, 2002-Ohio-4246 for the proposition that privilege cannot be considered when trimming tree branches on another's property. The issue before the court in *ALH Properties* was whether the trial court's decision to find the defendants acted without privilege was against the manifest weight of the evidence. In the present case, the Assignment of Error before this Court is whether the trial court abused its discretion in allowing the issue of privilege relating to the measure of damages should go to the jury.

{¶46} Under the facts of this case, we find no abuse of discretion by the trial court to allow this issue to be presented to the jury.

{¶47} The second Assignment of Error is overruled.

*III.*

{¶48} Appellants argue in their third Assignment of Error that the trial court erred in ruling the jury would not consider recklessness on the part of Maplewood as to R.C. 901.51.

{¶49} As stated above, R.C. 901.51 reads:

No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.

In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused.

{¶50} In defining "recklessly," this Court has utilized the definition from the criminal code. *Reicosky v. McCammon*, 5th Dist. No. 2006 CA 00342, 2008-Ohio-2775, ¶ 56. Pursuant to R.C. 2901.22(C): "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶51} At the close of Appellants' case, the trial court stated the jury would consider the issue of the recklessness of Maplewood. However, in instructing the jury the trial court refused to let the jury consider Appellants' claim against Maplewood under R.C. 901.51. It stated under the facts of the case, Maplewood could not be reckless because Maplewood was an agent of the Pasleys; therefore, its conduct as the agent was attributed to the principals, the Pasleys.

{¶52} The issue of the Pasleys' recklessness went to the jury. In Interrogatory No. 9, the jury found the actions of the Pasleys in cutting the branches of the trees

were not reckless, therefore denying Telle and Dupler treble damages pursuant to R.C. 901.51.

{¶53} However, the jury found in Interrogatory No. 2 that Maplewood was not acting at all times within the scope of its contract with the Pasleys. Based on Maplewood's actions, the jury found Appellants were entitled to $30,000.00 in compensatory damages and Maplewood was liable for 45% of the damages.

{¶54} The trial court's decision to prevent the issue of Maplewood's alleged recklessness to reach the jury was apparently based on the law of agency relationship. "Under the doctrine of respondeat superior, a principal or employer may generally be held liable for tortious acts committed by its agents or employees if such acts occur within the scope of the employment relationship." *Auer v. Paliath*, 2nd Dist. No. 25158, 2013-Ohio-391, ¶ 39 citing *Pierson v. Rion,* 2d Dist. No. 23498, 2010-Ohio-1793, ¶ 44, citing *Clark v. Southview Hosp. & Family Health Ctr.,* 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994).

{¶55} Appellants argue on appeal there is sufficient evidence of Maplewood's recklessness for the issue to reach the jury. We agree.

{¶56} Upon review of the record, the trial court erred in refusing to allow the jury to consider Maplewood's liability for treble damages under R.C. 901.51 in recklessly trimming the trees upon the Telle/Dupler property. Although the Pasleys and Maplewood stipulated to an agency relationship, the Pasleys' testimony indicated Maplewood acted outside the scope of the contract. The jury accordingly found the same in Interrogatory No. 3.

{¶57} The third assignment of error is sustained.

*IV.*

{¶58} Appellants argue in their fourth Assignment of Error the trial court erred when it failed to give the definition of "trespass" within the jury instructions. We disagree.

{¶59} The parties stipulated Appellees trespassed without authority on Appellants' property. The jury was instructed the parties stipulated Appellees trespassed without authority. The jury was charged with determining whether Appellants were damaged by Appellees' trespass and the amount of damages Appellants were entitled to because of Appellees' trespass upon Appellants' property. The jury found in favor of Appellants that Appellants were damaged by Appellees' trespass and awarded Appellants $30,000.00 in compensatory damages.

{¶60} We can find no harm suffered by Appellants by the lack of the definition of "trespass." Appellants argue the lack of the definition of "trespass" affected their ability to pursue their claim for punitive damages. We address punitive damages in Appellants' fifth Assignment of Error.

{¶61} The fourth Assignment of Error is overruled.

*V.*

{¶62} Appellants contend in their fifth Assignment of Error the trial court erred in granting Appellees' motion for directed verdict on Appellants' claim for punitive damages. In the May 23, 2012 judgment entry memorializing the verdict, the trial court stated, "At the close of the Plaintiffs case, the Court found insufficient evidence of malice and granted the Defendants a directed verdict, pursuant to Civil Rule 50, upon Plaintiffs' claim for punitive damages and attorney fees." A trial court speaks

through its journal entries. *State v. Lehman,* 5th Dist. No. 01 CA12, 2001 WL 1673729 (Dec. 12, 2001), *3, citing *State v. King,* 70 Ohio St.3d 158, 162, 1994–Ohio– 412, 637 N.E.2d 903 (1994).

{¶63} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Groob v. Keybank,* 108 Ohio St.3d 348, 2006–Ohio–1189, 843 N.E.2d 1170, ¶ 14. Civ. R. 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of the opponent's evidence, or at the close of all the evidence. Upon receiving a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed. *See* Civ. R. 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor. *See Hargrove v. Tanner,* 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist.1990).

{¶64} The purpose of punitive damages is not to compensate the plaintiff, but to punish and deter the defendant's conduct. *Dick v. Tab Tool & Die Co., Inc.,* 5th Dist. No. 2008–CA–0013, 2008-Ohio-5145, 2008 WL 4444765, ¶ 33 citing *Dardinger v. Anthem Blue Cross & Blue Shield,* 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121. Ohio law provides that an award of punitive damages is available only upon a finding of actual malice. *Berge v. Columbus Community Cable Access,* 136 Ohio App.3d 281, 316, 736 N.E.2d 517, (10th Dist.1999). Actual malice, necessary for an

award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty,* 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, (1987), syllabus. "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required." *Id.*

{¶65} The trial court found Appellants failed to establish by clear and convincing evidence that Appellees acted with actual malice when the tree limbs were cut. Appellants argue actual malice was demonstrated by the parties' conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. In this case, Appellants state it was Appellees' conscious disregard for the property lines before trimming the trees and allowing Maplewood to trim the trees without supervision.

{¶66} Appellants must demonstrate conscious disregard for the rights and safety of other persons and a great probability of causing substantial harm. *Estate of Thompson v. Club Car, Inc.*, 5th Dist. No. 2009-CA-0120, 2010-Ohio-2593, ¶ 52. The evidence in this case shows the Pasleys were under the belief the 16 trees were on their property. Roger Pasley testified he was told by the real estate agent when he purchased the home that the trees were located on his property. He mowed the lawn around the trees, which was Appellants' property, without incident or interference by Appellants. Based on their knowledge, the Pasleys informed Maplewood which trees to trim. The Pasleys testified they did not intend Maplewood to cut the trees in the manner it did. No testimony was provided by Maplewood as to why it cut the branches

the way it did.  We cannot say the evidence presented by Appellants is sufficient to show a conscious disregard by Appellees for the rights of Telle and Dupler as to the status of the property line or the manner in which the trees were cut.  In this case, we find reasonable minds can only conclude the evidence was insufficient to show a conscious wrongdoing on the part of Appellees to warrant punitive damages.

{¶67} The fifth Assignment of Error is overruled.

*VI.*

{¶68} The sixth Assignment of Error of Appellants contend the trial court erred in denying its Motion for New Trial.  We agree, in part.

{¶69} Appellants' motion for new trial was based on the following sections of Civ.R. 59:

A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

* * *

(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

(7) The judgment is contrary to law;

* * *

{¶70} In their motion for new trial, Appellants Telle and Dupler raise the identical five issues as presented in their five Assignments of Error. Our standard of review on a motion for new trial is abuse of discretion. Civ.R. 59. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). We must look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.

{¶71} Based on our findings on the above five Assignments of Error, we find the trial court abused its discretion in denying the motion for new trial as to the issue of recklessness on the part of Maplewood, but correctly denied the motion in all other respects. The matter is remanded for a new trial on the issue of recklessness as to Maplewood only.

{¶72} The sixth Assignment of Error is overruled in part and sustained in part.

## CONCLUSION

{¶73} In summary, Appellants' first, second, fourth, and fifth assignments of error are overruled.  The third assignment of error is sustained. The sixth assignment of error is overruled, in part, and sustained in part.

{¶74} The judgment of the Delaware County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with law and this opinion.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER


PAD:kgb