[Cite as *State v. Kirkbride*, 2026-Ohio-2059.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MUSKINGUM COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. CT2025-0102 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CR2024-0754 |
| DAVID KIRKBRIDE, | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: June 1, 2026 |

**BEFORE:** Andrew J. King; Craig R. Baldwin; Robert G. Montgomery, Judges

**APPEARANCES:** JOSEPH A. PALMER, Assistant Prosecuting Attorney, for Plaintiff-Appellee; W. JEFFREY MOORE, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1} Appellant David Kirkbride appeals his conviction and sentence on one count of obstructing official business and one count of assaulting a police dog. Appellee is the State of Ohio. For the reasons that follow, we affirm the decision of the trial court.

**STATEMENT OF FACTS AND THE CASE**

{¶2} On November 27, 2024, the appellant was indicted on one count of obstructing official business in violation of R.C. 2921.31(A) and (B), a felony of the fifth degree; and, one count of assaulting a police dog in violation of R.C. 2921.321(A)(1) and (E)(1)(a), a misdemeanor of the second degree. The appellant pleaded not guilty at his December 10, 2024, arraignment. The matter proceeded to trial on July 31, 2025, at which the following evidence was presented.

**{¶3}** On or about November 20, 2024, Deputy Matthew Kallgren and K9 Division Deputy Michael Wisecarver of the Muskingum County Sheriff's Office were assigned the task of serving outstanding warrants, one of which had been issued for the appellant on a child endangering charge unrelated to this appeal. Deputy Wisecarver participated in the task with his K-9 partner, Panzer, as the appellant was known to Sheriff's Office personnel to be a potentially dangerous individual.

**{¶4}** Deputies first went to the appellant's last known address, but did not find him at that location. Next, they went to another home which the appellant was sometimes known to frequent. Deputies arrived at said home, where they observed the appellant's vehicle. Deputies knocked on the front door, and when the homeowner answered she gave them her consent to search the property. Deputies began walking around the property, where they observed the appellant's truck with the door open and a pack of cigarettes, an open Mountain Dew, and crackers inside. Deputies also observed a barn, a dump truck, and a van on which the sliding doors were open. Deputy Wisecarver observed the appellant "crouched down, sitting on his knees, with his hands tucked up underneath of him." Both deputies testified that entering a confined space to pursue an offender is dangerous, as they do not know if the offender is armed, or if the offender is going to fight them. As a result, they generally do not enter into such confined spaces in order to apprehend an offender.

**{¶5}** Deputy Wisecarver testified that upon seeing the appellant through the open sliding door crouched inside the van, he told the appellant: "I can see you ... sheriff's office K-9, come out, you're going to be bitten;" Wisecarver testified further that he repeated these statements "over and over again." The appellant, however, refused to come out of the van. Deputy Wisecarver testified that while he could not remember the exact

number of times he repeated his command, he continued with his command to the appellant to exit the van for approximately five minutes. When the appellant continued to refuse to comply, Deputy Wisecarver deployed K-9 Panzer to apprehend him.

{¶6} Deputy Wisecarver testified that he ultimately decided to send Panzer in after the appellant because the appellant "was inside the van. He wasn't complying. He wasn't listening. It was a small area that - - not somewhere that I would go into to get him. The way he was positioned in the van, he was out of reach so there was no reaching in to grab him. It was - - there was - - the safest option was to get the dog to bring him out." Deputy Wisecarver testified further that deploying Panzer "saved [Wisecarver] from going inside the van and potentially creating a deadly force scenario." The appellant punched Panzer in the snout, grabbed ahold of Panzer's gums and tried to pry Panzer off. Deputy Wisecarver testified that when he and Deputy Kallgren arrested the appellant they found knives and/or box cutters on his person.

{¶7} Deputies Kallgren testified that he and Deputy Wisecarver had a number of warrants to execute on that day, and the time they had to spend apprehending the appellant impeded their ability to attend to the service of said warrants. Counsel for the appellant objected to the question as irrelevant and stipulated that the deputies had official duties that the appellant's conduct impeded:

Q. [BY MR. HOWARD]     Okay. Did you have other tasks that you needed to complete that day?

A. [DEPUTY KALLGREN]  Yes.

Q.     Okay. What are some of the other things that he kept you from doing?

A.     Responding to calls for service, traffic enforcement. There were several other warrants that were signed and issued by judges to serve.

MR. MOORE: Objection; irrelevant. What else he had to do that day, how are we focused on this?

THE COURT: I mean, are you going to stipulate that he had official duties that this impeded?

MR. MOORE: Absolutely.

{¶8} The appellant had filed a Motion in Limine prior to trial in which he argued that he believed Deputy Wisecarver brought K-9 Panzer to the scene because the appellant "was listed as a caution because he had violent tendencies, and being known to abuse drugs, resist arrest, and commit domestic violence," and moved the court for an order limiting the appellee from "any use of prior events to convictions for felonies and crimes of moral turpitude." The issue was argued prior to opening arguments, and the trial court determined that the Deputy Wisecarver could explain why he brought the K-9, with the limitation that he could not go into the appellant's prior criminal record unless some reason to allow it arose during trial.

{¶9} The appellee rested, after which the appellant presented the testimony of witness T.M., who owned the home where the appellant was apprehended; and, witness M.C., a neighbor who lived across the street and testified regarding his observations of the incident from his front porch.

{¶10} The appellant requested a jury instruction on self-defense. The appellee opposed the request, arguing "[t]here is no right to deploy self-defense against law enforcement when they are engaged in their lawful duties, so that instruction won't be appropriate." The trial court thereafter denied the appellant's request for a self-defense instruction.

{¶11} The jury found the appellant guilty on both the obstruction of official business charge, and the assault of a police dog charge. The appellant filed a timely appeal, and sets forth the following five assignments of error:

{¶12} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON SELF-DEFENSE."

{¶13} "II. THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION IN LIMINE."

{¶14} "III. THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO TELL THE JURY THAT THE APPELLANT WAS "DANGEROUS.""

{¶15} "IV. THE TRIAL COURT ERRED WHEN IT DID NOT ALLOW THE APPELLANT TO TELL THE JURY THE BASIS FOR THE WARRANT THAT THE OFFICERS WERE SERVING AT THE TIME OF THE APPELLANT'S ARREST."

{¶16} "V. THE TRIAL COURT ERRED IN NOT STRIKING THE PROSECUTORS [SIC] ARGUMENT AND INSINUATION THAT COUNSEL FOR THE DEFENDANT WAS LYING AND WAS JUST TRYING TO ARGUE FALSE THINGS IN DEFENSE OF HIS CLIENT, AND THAT A GUILTY PERSON HAS THE RIGHT TO PUT ON A DEFENSE."

## ASSIGNMENT OF ERROR NUMBER I

{¶17} The appellant argues in his first assignment of error that the trial court erred by failing to give a jury instruction on self-defense. We disagree.

### *Standard Of Review*[1]

---

[1] The appellant submits manifest weight and plain error as the standards of review in this matter, neither of which are applicable to the assignments of error presented herein.

{¶18} The determination whether to give a jury instruction is a matter left to the sound discretion of the trial court. *Telle v. Pasley*, 2013-Ohio-2407, ¶ 42 (5th Dist.). A trial court is obligated to provide jury instructions which correctly and completely state the law. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 22. The jury instructions must also be warranted by the evidence presented in a case. The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review. *Telle, supra.*

{¶19} Furthermore, as recently set forth by this Court in *State v. Simpson*, 2025-Ohio-4797, (5th Dist.):

> When reviewing a trial court's decision about jury instructions, we apply an abuse-of-discretion standard. *State v. Palmer*, 174 Ohio St. 3d 561, 2024-Ohio-539, ¶ 16, 238 N.E.3d 33, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion is "'more than an error of law or judgment'" and implies that the trial court's attitude was "'unreasonable, arbitrary[,] or unconscionable.'" *Wolons* at 68, quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

## *Analysis*

{¶20} The appellant requested that the trial court instruct the jury on self-defense in connection with his charge of assaulting a police dog. Although *Simpson* involved a claimed right of self-defense against a law enforcement officer rather than a K-9, the analysis is nevertheless applicable herein:

> Under R.C. 2901.05(B)(1), anyone is allowed to use force in self-defense. When a defendant charged with a crime involving the use of force

claims that he or she used that force in self-defense, that defendant at his or her trial bears the initial burden of showing that legally sufficient evidence that "tends to support" the claim has been presented. R.C. 2901.05(B)(1); *State v. Messenger*, 171 Ohio St. 3d 227, 2022-Ohio-4562, ¶ 22, 25, 216 N.E.3d 653. A defendant meets that burden of production if the "evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant." *Messenger* at ¶ 25. If the defendant meets that initial burden, the prosecution must then disprove self-defense beyond a reasonable doubt. *Id.* at ¶ 24.

To support a self-defense claim involving the use of non-deadly force, the defendant must be able to point to some evidence tending to support the view that he or she (1) was not at fault in creating the situation that led to the affray, (2) had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Asp*, 2023-Ohio-290, ¶ 55, 207 N.E.3d 893 (5th Dist.), citing *State v. Paskins*, 2022-Ohio-4024, ¶ 48, 200 N.E.3d 684 (5th Dist.).

To be sure, a defendant's burden of showing, under R.C. 2901.05(B)(1), that evidence has been presented that "tends to support" a self-defense claim "is not a heavy one and . . . might even be satisfied through the state's own evidence." *Messenger* at ¶ 22. This case, though, involved one additional complication for the defense: the alleged victim was

a law-enforcement officer. Even had the trial judge given the jury a self-defense instruction as Simpson requested, the judge would almost certainly have explained to the jury, too, that "[u]nless an arresting officer uses excessive or unnecessary force, a private citizen may not use force to resist arrest by an authorized police officer, regardless of whether the arrest is illegal." *Asp* at ¶ 61; *see also City of Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), paragraph three of the syllabus ( "In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties").

After carefully reviewing the record, we see no evidence that the deputy who was the alleged victim of Simpson's alleged assault offense employed excessive or unnecessary force against Simpson in the moments before Simpson knocked him to the floor. The video footage of the incident shows that the deputy was keeping just one hand on Simpson's back to hold him in place against the wall while that deputy waited for a colleague to arrive. On cross examination, Simpson answered "correct" to the question that "at the point that you decided to do martial arts on the deputy, your hands had already been on the wall and there was no pushing, nobody was pushing you down the stairs, nobody was pushing you anywhere at that point, right?" And no testimony from Simpson or any other witness suggested that the deputy was using unnecessary or excessive force before the assault.

Even after drawing in Simpson's favor all reasonable inferences from the evidence, we cannot rightly say that a rational trier of fact would have found in this case that Simpson acted in self-defense against his law-enforcement-officer victim.

Keeping in mind that the trial judge was in the best position to gauge the evidence presented at trial and determine if that evidence was sufficient to require an instruction, we see no abuse of discretion in the trial judge's decision to deny Simpson's request for a self-defense jury instruction in this case.

*Id*. at ¶ 10-15.

**{¶21}** In this case, Deputy Wisecarver testified at trial that he observed the appellant inside the van, with the sliding door open, crouched down on his knees, with his hands tucked under his knees. Wisecarver was unable to ascertain whether the appellant had a weapon, and the appellant was crouched down in a confined space. Deputy Wisecarver alerted the appellant to Wisecarver's presence, as well as the presence of K-9 Panzer, spending at least five minutes telling the appellant to come out or the K-9 would be sent in. The appellant refused to exit the van. Deputy Wisecarver specifically testified that he told the appellant "I can see you … sheriff's office K-9, come out, you're going to be bitten" "over and over again." The appellant refused to come out of the van, thus "creating the situation that led to the affray." The deputies also both testified regarding the risks associated with apprehension of an offender in such a small, enclosed space. After reviewing the evidence presented during trial, we see no evidence that Deputy Wisecarver, or K-9 Panzer, who was the alleged victim of the appellant's alleged assault offense, employed excessive or unnecessary force against the appellant in the

moments before the appellant punched Panzer. Accordingly, we find that the trial court did not err when it denied the appellant's request for a jury instruction on self-defense, and the appellant's first assignment of error is overruled.

**ASSIGNMENTS OF ERROR NUMBERS II & III**

**{¶22}** The appellant's assignments of error numbers two and three are interrelated, and as such shall be addressed together. The appellant argues in his second assignment of error that the trial court erred when it did not grant his motion in limine regarding the deputies' reason for utilizing the K-9 unit, and argues in his third assignment of error that the trial court erred in allowing the appellee to "tell the jury that the [appellant] was dangerous." We disagree.

### *Standard Of Review*

**{¶23}** "The granting or denying a motion in limine are [sic] reviewed under an abuse of discretion standard of review. *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 5 Ohio B. 481, 450 N.E.2d 1140 (1983)." *Westfield Ins. Grp. v. Silco Fire & Sec.*, 2019-Ohio-2697, ¶ 45 (5th Dist.).

### *Analysis*

**{¶24}** The appellant submits that the trial court erred when it did not grant his motion in limine regarding statements as to why deputies utilized a K-9 unit when serving the outstanding warrant upon the appellant, and in allowing the appellee to reference the

appellant as dangerous. The appellant argues that the mere mention of the Sheriff's Office awareness that he was potentially dangerous improperly implies a criminal history, as well as prior bad acts.

{¶25} The trial court heard arguments on the issue, and determined that Deputy Wisecarver could explain why he brought and deployed K-9 Panzer, with the limitation that he could not go into the appellant's prior criminal record. Specifically, the trial court stated that ". . . just for the record, I'm going to overrule [appellant's] motion in limine at this time. [Appellee is] going to be able to talk about it if they are explaining why they deployed the dog, but, also, you're not going to get into his prior criminal history unless there's some reason why you'd be allowed to, and at this time I don't' see that there's a reason that you would get into his prior criminal history, so - - you are also not to mention his prior criminal history in opening. Is that clear?" The appellant challenged the deputies' use of a K-9, necessitating a response on the part of the appellee. The trial court made a decision on the issue that balanced the interests of both parties, and allowed enough information to explain use of the K-9 without allowing evidence of the appellant's prior criminal history and/or bad acts. We cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in doing so. As such, the appellant's second and third assignments of error are without merit and are therefore overruled.

## ASSIGNMENT OF ERROR NUMBER IV

{¶26} The appellant argues in his fourth assignment of error that the trial court erred when it did not allow him to tell the jury the offense for which the outstanding warrant for his arrest had been issued. We disagree.

### Standard Of Review

{¶27} An alleged error regarding the admission of evidence is analyzed under an abuse of discretion standard of review. As set forth above, the term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore, supra.* See, also, *State ex rel. DeWine v. 333 Joseph, L.L.C.*, 2014-Ohio-5090, ¶ 24 (3rd Dist.) ("[p]resuming that the trial court is in a better position to evaluate the evidence and assess its credibility, we will not reverse the trial court's evidentiary ruling unless it was "contrary to law, unreasonable, not supported by the evidence, or grossly unsound.")

### Analysis

{¶28} The appellant was tried on two charges: obstructing official business and assaulting a police dog. R.C. 2921.31 defines obstructing official business as follows:

> (A)  No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

R.C. 2921.321 defines assault on a police dog, and states in pertinent part:

> (B)  No person shall knowingly cause, or attempt to cause, physical harm to a police dog or horse in either of the following circumstances:

> (1)  The police dog or horse is assisting a law enforcement officer in the performance of the officer's official duties at the time the physical harm is caused or attempted.

**{¶29}** The elements of obstructing official business as applied herein are: (1) an act by the appellant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and, (5) the appellant does so act without a privilege to do so. *State v. Acker*, 2023-Ohio-2085, ¶ 38 (5th Dist.). In this case, the appellant, through counsel, stipulated to obstructing official business:

> THE COURT:      I mean, are you going to stipulate that he had official duties that this impeded?
>
> MR. MOORE:     Absolutely.

**{¶30}** The elements of assaulting a police dog are: (1) knowingly; (2) causing or attempting to cause; (3) physical harm to a police dog; (4) while the police dog is assisting a law enforcement officer in the performance of the officer's official duties at the time the physical harm is caused or attempted. In this case, K-9 Panzer was assisting Deputy Wisecarver in the performance of his duties, the service of outstanding warrants in particular. The appellant refused to comply with Deputy Wisecarver's command to exit the van. Deputy Wisecarver repeated the command over and over again, for approximately five minutes, telling the appellant that he had a police dog that he would deploy if the appellant continued with his refusal to exit the van. The appellant refused to exit the van, and K-9 Panzer was deployed. The appellant punched Panzer in the snout and grabbed his gums. These actions were clearly done knowingly, causing or attempting to cause physical harm to Panzer while Panzer was assisting Deputy Wisecarver in the performance of his official duties. The basis for the outstanding warrant the deputies were serving upon the appellant - that is, whether it was for a felony offense or a misdemeanor

offense - has no bearing on whether the elements of the criminal offense of assaulting a police dog were satisfied.

{¶31} Evid.R. 401 defines relevant evidence as "... evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides that relevant evidence is generally admissible, and irrelevant evidence is generally inadmissible. The underlying purpose for the warrant the deputies were serving upon the appellant does not have a tendency to prove or disprove the elements of the obstructing official business charge against the appellant, particularly since the appellant stipulated to said charge. Nor does it make the existence of any of the elements of assaulting a police dog more or less probable than they would be without evidence regarding the nature of the warrant. Furthermore, it was within the trial court's discretion to determine if sufficient evidence had been presented to support the affirmative defense of self-defense such that a jury instruction regarding the same was warranted.

{¶32} Upon review of the record, we cannot say that the trial court acted unreasonably, arbitrarily or unconscionably when it determined that the focus of the trial would be on the presentation of evidence regarding the elements of the offenses with which the appellant had been charged. Accordingly, the appellant's fourth assignment of error is without merit and is therefore overruled.

**ASSIGNMENT OF ERROR NUMBER V**

{¶33} The appellant argues in his fifth assignment of error that the trial court erred when it did not strike the appellee's prejudicial statement made during closing arguments, instruct the jury to disregard, or grant a mistrial for the appellee's misconduct. We disagree.

### Standard Of Review

{¶34} The appellant is essentially arguing in his fifth assignment of error that the appellee engaged in prosecutorial misconduct which the trial court did not sufficiently address. The issue of prosecutorial misconduct was discussed by this Court in *State v. Lee*, 2024-Ohio-2044 (5th Dist.):

> The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, ¶ 30, citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

> In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749.

> Allegations of prosecutorial misconduct implicate due process concerns, and the touchstone of the analysis is the " 'fairness of the trial, not the culpability of the prosecutor.' " *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, 840 N.E.2d 593, ¶ 92, *quoting Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

> If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d

402, 410, 613 N.E.2d 203 (1993). With regard to each allegation of misconduct, we must determine whether the conduct was "improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist. 2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988).

Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law and fact, which we review *de novo. State v. Razey*, 5th Dist. Delaware No. 23CAC030021, 2023-Ohio-4190, ¶ 28, citing *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009).

*Id.* at ¶¶46-50.

### *Analysis*

**{¶35}** The appellant specifically cites the following statement made by appellee during closing arguments, found at Jury Trial Transcript 162:6-18, as reversible error:

MR. LITLE:        . . . And Mr. Moore had to argue something to you, so the thing that's getting argued to you is about the dog and why not a Taser or a baton or pepper spray.

MR. MOORE:      Your Honor, I'm going to object that I have to put forth some argument.

MR. LITLE: Sorry. I don't mean he has an obligation. I mean he - -

THE COURT: I'm going to sustain that. The Defense doesn't have an obligation to present any evidence.

MR. LITLE: Presumably an attorney is going to say something, but there is no obligation to say anything. I apologize for that.

{¶36} We find that the trial court appropriately responded to the appellant's objection. Further, we do not find that the appellee engaged in prosecutorial misconduct. After considering the effect said comments may have had on the jury "in the context of the entire trial," we find the trial court appropriately sustained the objection and minimized the negative effect of the statement, if any, on the jury. Accordingly, the appellant's fifth assignment of error is without merit, and it is therefore overruled.

## CONCLUSION

{¶37} Based upon the foregoing, we find the appellant's assignments of error numbers one, two, three, four, and five to be without merit, and overrule the same. The decision of the Muskingum County Court of Common Pleas is, therefore, affirmed.

{¶38} Costs to appellant.

By: Baldwin, P.J.

King, J. and

Montgomery, J. concur.