[Cite as *State v. Tyus*, 2020-Ohio-103.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108270 |
| v. | : | |
| D'ANGELO JAMAR TYUS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 16, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-633607-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Lisk and Michael Barth, Assistant Prosecuting Attorneys, *for appellee*.

Louis E. Grube, *for appellant*.

SEAN C. GALLAGHER, P.J.:

{¶ 1} D'Angelo Jamar Tyus appeals his convictions for robbery, abduction, and theft entered upon a jury verdict of guilt. The trial court imposed a three-year, aggregate term of imprisonment. We affirm.

{¶ 2} Tyus and codefendant Myranda Hyde knew the victim. The three were together at a pavilion behind a church in Parma Heights, Ohio, sharing an alcoholic beverage. Surveillance video captured the entire encounter. According to the victim, Tyus and Hyde were angered by comments the victim made earlier in the day. After a brief period of conversation, Tyus and Hyde physically attacked the victim for approximately 30 minutes. The assault was interspersed with Tyus and Hyde rummaging through the victim's possessions and concluded with the codefendants walking away after Tyus took a cigarette or other similar tobacco product from the victim's possession. After the attack ceased, the victim's cell phone, pocket change, and some of his tobacco products were determined to be missing. Hyde was found in possession of the victim's cell phone and had used it to harass the victim and his friend following the attack.

{¶ 3} During the jury's deliberation, the jury foreman asked the trial court for clarification on the definition of robbery that was provided in the general instructions. The trial court provided a written response, but it does not appear from the record that the parties were offered an opportunity to review the response before it was sent to the jury. The jury was then in possession of the original instructions and the trial court's written response in continuing its deliberation.

{¶ 4} In this appeal, Tyus claims that the trial court erred by giving an incorrect and misleading instruction on the elements of robbery that ultimately confused the jury.

{¶ 5} It is well settled that "[j]ury instructions must 'correctly and completely state the law.'" *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 123, quoting *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 32. In reviewing jury instructions, it must be decided "not only whether the instruction at issue is correct in the abstract but also whether it is potentially misleading." *Id.*, citing *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 52. If an appellate court concludes that an instruction is ambiguous, it must then be determined "'whether there is a reasonable likelihood that the jury has applied [it] in a way' that violates the Constitution." *Id.*, quoting *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). No single instruction should be reviewed in isolation. *Id.* The particular jury instruction being challenged must be viewed "in the context of the overall charge." *Id.*, citing *State v. Madrigal*, 87 Ohio St.3d 378, 396, 2000-Ohio-448, 721 N.E.2d 52.

{¶ 6} The jury was initially instructed that before it could find Tyus guilty of robbery, it must be found, beyond a reasonable doubt, that Tyus "*while* attempting or committing a theft offense, or in fleeing immediately after a theft attempt or offense, * * * *did* inflict or attempt to inflict or threaten to inflict physical harm" on the victim. (Emphasis added.) In seeking clarification, the jury asked the trial court the following question: "[i]n the definition [of robbery], does it mean the 'attempting or committing a theft offense must come [first], or be the primary aim

of the defendant? Or [sic] does it include the act at 'any point' during the altercation?" The trial court offered the following response:

> [t]he statute permits you to consider alternate methods for the physical harm element — i.e., inflicting, attempting to inflict or threatening to inflict physical harm — and alternate methods for the temporal requirement — i.e., *during or in fleeing* immediately after. The statute does not require you to decide the "primary aim" or that events happened in any particular order. It only requires that you must find all elements beyond a reasonable doubt.

(Emphasis added.)

{¶ 7} Tyus claims that the jury was permitted to conclude that the theft occurred as a mere afterthought to the undisputed infliction of physical harm that occurred throughout the victim's ordeal. According to Tyus, the theft of the tobacco product as he was departing did not occur concurrent with the infliction of physical harm and the jury's request for clarification demonstrated confusion as to the proper elements of the crime.

{¶ 8} The incident in this case was not as fleeting as crimes of this nature tend to be. Instead, the defendants assaulted and restrained the victim for a prolonged period of time, and at the same time they physically assaulted the victim while rummaging through his belongings with Tyus asking for everything the victim had on him. At one point during the prolonged attack, the victim's cell phone and tobacco products were stolen. Tyus's appeal primarily focuses on the theft of the tobacco product to the exclusion of the missing cell phone. This is for good reason. Standing alone, the theft of the tobacco product immediately before Tyus's departure closely resembles the facts of *State v. Ballard*, 14 Ohio App.3d 59, 469

N.E.2d 1334 (8th Dist.1984). In *Ballard*, the defendant took the victim's purse but promised to return it. The defendant found a firearm inside the purse, removed the weapon and returned the purse. According to *Ballard*, and other similar cases, because the theft occurred after the force was exerted, the theft did not occur contemporaneously with the alleged attempt to inflict physical harm on the victim. But in this case, there is a distinguishing fact — the theft of the cell phone occurred during the infliction of physical harm.

{¶ 9} Regardless, when the trial court's response to the jury's request for clarification is read in the context of the overall instructions, the jury's question was not focusing on the temporal relationship between the harm and the theft element of robbery. Instead, the jury was asking for clarification on whether the defendants had to form the intent to commit a theft offense before the physical violence began or whether the theft offense must be the primary factor behind the violence. The trial court correctly instructed that the motive for the physical harm and a premeditated intent to commit a theft offense are not part of the statutory elements of robbery. That statement accurately reflects the law.

{¶ 10} With respect to the temporal connection between the inflicting harm theft elements, the jury was initially told that the robbery statute requires the state to prove beyond a reasonable doubt, that the defendants "*while* attempting or committing a theft offense, or in fleeing immediately after a theft attempt or offense, * * * *did inflict* or attempt to inflict or threaten to inflict physical harm" on the victim. (Emphasis added.) S*ee, e.g., Ballard* at syllabus. Thus, the jury was properly

instructed that the infliction of harm must occur while the theft offense is being committed or while the defendant is fleeing the scene of the crime. The trial court's written response to the jury's mid-deliberation question further reinforced the correct temporal connection between the inflicting physical harm and the theft elements: according to the trial court's responsive instruction to the jury, the inflicting physical harm must occur "during or in fleeing immediately after" the theft offense.

{¶ 11} The jury instructions and the trial court's response to the jury's request for clarification accurately and completely stated the law, and it cannot be concluded that the trial court improperly instructed the jury to eliminate the temporal connection between the theft and physical harm elements of robbery. Tyus has not demonstrated any error with the instructions.

{¶ 12} For a similar reason, Tyus's second claim, that his conviction for robbery is based on insufficient evidence, is without merit.

{¶ 13} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In order to substantiate the robbery charge in this case, the state must have

demonstrated beyond a reasonable doubt that Tyus "in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, * * * [i]nflicted, attempted to inflict, or threatened to inflict physical harm on another." R.C. 2911.02(A)(2).

{¶ 14} According to Tyus, the state's evidence solely demonstrated that a theft was completed after he and Hyde had already assaulted the victim, and therefore, the state failed to prove that Tyus inflicted the physical harm *while* committing or attempting the theft offense. Tyus frames his argument based on his confession of taking the tobacco products from the victim after the assault had ceased and immediately before Tyus departed the scene. Tyus's argument, however, ignores the theft or attempted theft that occurred while Tyus and Hyde physically assaulted the victim during the lengthy altercation.

{¶ 15} The criminal conduct lasted for over 30 minutes. It is impossible to segregate the defendants' overall conduct into discrete acts. Both the physical attack and the theft offense were ongoing through the entire encounter. Throughout the incident, Tyus physically attacked the victim while rummaging through his personal belongings and telling the victim he wanted everything the victim had. It is reasonable to conclude that Tyus and Hyde were looking for something they intended to steal — there is no evidence that either of the defendants had permission to take anything from the victim after the defendants began assaulting the victim. At one point, about halfway through the ordeal, the kneeling victim held his cell phone as if he were attempting to show Tyus something. After that, the cell phone

was stolen, and it was later discovered to be in Hyde's possession. The victim did not give either defendant permission to take the cell phone.

{¶ 16} Thus, when all the evidence is considered in a light most favorable to the state, it was demonstrated beyond a reasonable doubt that Tyus, while attempting or committing a theft offense, inflicted physical harm on the victim. There is sufficient evidence in support of the conviction irrespective of Tyus's claim that the stolen cigarette or other tobacco product could not substantiate the robbery offense in and of itself.

{¶ 17} In the final assignment of error, Tyus claims that there are errors in the itemization of the costs of prosecution that was generated by the clerk of courts after Tyus appealed his final entry of his convictions. That final entry contained a generic reference to the trial court entering "judgment against the defendant in an amount equal to the costs of this prosecution."

{¶ 18} "In all criminal cases, costs must be included in the sentencing entry." *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 19, citing R.C. 2947.23(A). The responsibility for itemizing the costs of prosecution falls onto the clerk of courts. *Id.*, citing R.C. 2949.14. "[E]ven if the itemized bill is ready at the time of sentencing, 'the specific amount due is generally not put into a judgment entry.'" *Id.*, quoting *State v. Glosser*, 157 Ohio App.3d 588, 2004-Ohio-2966, 813 N.E.2d 1, ¶ 27 (5th Dist.) (Edwards, J., concurring). Consistent with that black-letter law, the typical sentencing entry assesses unspecified costs, with the itemized bill

generated at a later date. *Id.* The practice of generically imposing costs without the itemization does not affect the finality of the final entry of conviction. *Id.*

{¶ 19} This is because a "judgment for costs in a criminal case is a civil, not a criminal, obligation, and may be collected only by the methods provided for the collection of civil judgments." *Strattman v. Studt*, 20 Ohio St.2d 95, 103, 253 N.E.2d 749 (1969); *State v. Moore*, 135 Ohio St.3d 151, 2012-Ohio-5479, 985 N.E.2d 432, ¶ 11. Further, until the clerk attempts to collect or issues a certificate of judgment upon the imposed costs, any attempt to challenge the itemization process is generally deemed premature. *State ex rel. West v. McDonnell*, 139 Ohio St.3d 120, 2014-Ohio-1563, 9 N.E.3d 1030, ¶ 7; *see also Abrams v. Fuerst*, 5th Dist. Richland No. 10-CA-146, 2011-Ohio-1641; *State v. Murillo*, 2d Dist. Montgomery No. 21919, 2008-Ohio-201, ¶ 3 (defendant's appeal of the clerk's attempt to collect court costs four years after the final conviction was ripe for review); *State v. Mamontov*, 6th Dist. Lucas No. L-06-1261, 2007-Ohio-1863, ¶ 2 (clerk was not permitted to collect court costs over two years after the final conviction because the trial court waived those costs in the final sentencing entry); *see also State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 15 (discussing several of the potential civil remedies available for the clerk of courts to collect imposed court costs).

{¶ 20} In this case, the statutorily required itemization of court costs was completed after Tyus filed his notice of appeal. Tyus is not appealing the imposition of court costs in general, i.e., his future ability to pay those costs, which must be addressed in the direct appeal or within the court's continuing jurisdiction under

R.C. 2947.23(C). *State v. Braden*, Slip Opinion No. 2019-Ohio-4204, ¶ 30; s*ee also State v. Walker*, 8th Dist. Cuyahoga No. 96305, 2011-Ohio-5270, ¶ 11; *State v. Pettway*, 8th Dist. Cuyahoga No. 98836, 2013-Ohio-1348.

{¶ 21} Tyus is challenging the itemization of the costs of prosecution that occurred following the issuance of the final entry of conviction, and he is raising these issues in the first instance with this court sitting in review of the final conviction. Although Tyus refers to that itemization in his appellate briefing, it is not part of the appellate record. As a result, we are unable to review the composition of the final costs the clerk of courts is seeking to collect in order to determine whether the specific portions Tyus is challenging comply with the relevant statutory provisions. *See State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, 966 N.E.2d 958, ¶ 126 (12th Dist.) (noting that any premature challenges of the itemization process in the direct appeal is hampered by the lack of a record). The final assignment of error is overruled. Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
RAYMOND C. HEADEN, J., CONCUR