[Cite as *State v. Williams*, 2024-Ohio-401.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

    Plaintiff-Appellee,

  - vs -

OMAR S. WILLIAMS,

    Defendant-Appellant.

---

**CASE NO. 2023-T-0021**

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 00427

---

## O P I N I O N

Decided: February 5, 2024
Judgment:  Affirmed

---

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Robert T. McDowall, Jr.*, Robert T. McDowall Co, LLC, 415 Wyndclift Place, Youngstown, OH 44515 (For Defendant-Appellant).

---

MATT LYNCH, J.

 **{¶1}** Defendant-appellant, Omar S. Williams, appeals from his conviction for Aggravated Robbery in the Trumbull County Court of Common Pleas.  For the following reasons, we affirm the judgment of the lower court.

 **{¶2}** On June 28, 2022, Williams was indicted by the Trumbull County Grand Jury for Aggravated Robbery, a felony of the second degree, in violation of R.C. 2911.01(A)(3); Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1); Abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2);

Disrupting Public Services, a felony of the fourth degree, in violation of R.C. 2909.04(A)(1); and Domestic Violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A). The first two counts included repeat violent offender specifications under R.C. 2941.149.

{¶3} A jury trial was held on February 21 and 22, 2023. The following pertinent testimony and evidence were presented:

{¶4} Michelle Weimer testified that on May 17, 2022, Williams, her boyfriend, was living with her. On the morning of May 17, as she was leaving to take her children to school, Williams made a comment about her not saying goodbye and began choking her. He then told her to give him a ride and she planned to drop him off at his uncle's house. As she began driving there, Williams told her to take the children to school first, stating "you're going to wish you dropped these kids off."

{¶5} Weimer testified that she returned the children to her house and began driving to the uncle's residence. During that time, Williams took her cell phone from her and started looking through it, noticing that her daughter was texting her. He told Weimer to tell her daughter she was ok and stated: "if I don't, he is going to pick her up and tie her up and she's going to watch him kill me." She spoke to her daughter and Williams then again took her phone away from her. While she continued to drive toward Warren from Austintown, he saw a specific message on her phone and then hit her.

{¶6} According to Weimer, when she neared his uncle's residence in Warren, he stated that they were not going there, and said: "You're not going home, * * * your kids are going to be orphans." She drove him to his workplace to run an errand. She then took him to an ATM. He exited the vehicle, taking her keys and phone, and attempted to

2

use the ATM, which was out of order. She then drove him to the Cortland Walmart to use an ATM inside. When they arrived at the Walmart, he told her to go inside with him. He demanded she give him her keys "'cause you're not leaving me." She handed him the keys, they walked in together, and he told her "not to do nothing dumb." Weimer testified that while Williams was using the ATM, she located a Walmart employee, Heather Talkington. Weimer told Talkington her boyfriend had been beating her and asked her to call 911. Talkington attempted to hide her from Williams. Williams then saw Weimer and Weimer began to run. Talkington yelled for help and told Williams to leave Weimer alone. Weimer heard Talkington hit something and scream. Another Walmart worker told Williams to leave and pushed him. Weimer told him not to take her vehicle but he left, taking her car.

{¶7} Heather Talkington testified that, while she was working at Walmart, Weimer approached her and looked terrified. According to Talkington, Weimer told her that her boyfriend had been beating her in the parking lot. She told Weimer to lock herself in the bathroom and yelled for help. Talkington stated that Williams came up behind her but she did not remember what happened after that point. Surveillance video shows Williams running across the store toward Weimer and Talkington and Talkington noted that the video showed she hit a skid. As a result of the incident, Talkington's suffered injuries to her head, neck, and liver, and was hospitalized for two weeks. She has not been able to work since that time.

{¶8} Sergeant Jake Abbott of the Bazetta Police Department responded to the scene and was advised by Weimer that it involved "a domestic situation that has been occurring since the early morning." She had scratch marks and a "red print" on her neck,

3

Case No. 2023-T-0021

as well as blood around her lip and bleeding near her fingernails.

{¶9} The jury found Williams guilty of the offenses as charged in the indictment and the court found him to be a repeat violent offender. The court sentenced Williams to an aggregate prison sentence of 33 to 38 and one-half years.

{¶10} Williams timely appeals and raises the following assignment of error:

{¶11} "The State of Ohio failed to present sufficient evidence [that] defendant-appellant, Omar Williams['], infliction of serious physical harm to the victim occurred while he was committing a theft offense or was fleeing immediately after the commission of the theft offense."

{¶12} Williams argues that his conviction for Aggravated Robbery was not supported by sufficient evidence since the injuries inflicted on Talkington did not occur while Williams was committing a theft offense.

{¶13} A challenge to the sufficiency of the evidence raises the issue of "whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165; Crim.R. 29(A) ("[t]he court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction"). In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "Whether there is legally sufficient evidence to sustain a conviction is a question of law that this court reviews de novo." *State v. Smith*, 167 Ohio St.3d 220, 2022-Ohio-269, 191 N.E.3d 418, ¶ 5.

Case No. 2023-T-0021

{¶14} Williams was convicted of Aggravated Robbery under R.C. 2911.01(A)(3), which provides: "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: * * * Inflict, or attempt to inflict, serious physical harm on another." A theft offense is defined under R.C. 2913.01(K) as a violation of various sections of the Revised Code or municipal ordinances. A theft offense occurs under R.C. 2913.02(A)(1) when a person, "with purpose to deprive the owner of property * * *, [does] knowingly obtain or exert control over * * * property * * * [w]ithout the consent of the owner" or by threat or intimidation.

{¶15} Williams does not challenge the sufficiency of the evidence as to his other convictions but argues that the Aggravated Robbery conviction must be reversed. He contends that the offense of Aggravated Robbery requires that harm be inflicted while "committing" a theft offense and that this "contemplates an act of theft done contemporaneously with the inflicting of serious injuries."

{¶16} As noted above, to commit an Aggravated Robbery under the pertinent section, the defendant must, "*in attempting or committing a theft offense*," or while in fleeing immediately thereafter, inflict or attempt to inflict serious physical harm on another. In determining the meaning of the phrase "in attempting or committing a theft offense," it has been held that the use of force in robbery or aggravated robbery offenses must be "contemporaneous to that theft offense." *State v. Calhoun*, 8th Dist. Cuyahoga No. 59369, 1991 WL 251673, *2 (Nov. 27, 1991); *State v. Tyus*, 8th Dist. Cuyahoga No. 108270, 2020-Ohio-103, ¶ 10. Here, there are two acts of theft that the State alleged occurred in conjunction with the assault of Talkington: the theft of Weimer's phone prior

5

to the assault and the theft of Weimer's vehicle. We will first address the theft of the phone.

{¶17} In *State v. Madera*, 8th Dist. Cuyahoga No. 93764, 2010-Ohio-4884, two men were arguing and the defendant then took money that the victim threw on the ground. After this act, the men sat on the couch for a short period of time, began arguing again, and a physical brawl ensued. The court determined that "the lapse in time between the theft and the use of force * * * is sufficient to justify reversal of Madera's convictions for aggravated robbery," as there was "enough delay between the two actions that they could not be considered contemporaneous." *Id.* at ¶ 23. *See also State v. Griggs*, 8th Dist. Cuyahoga No. 97284, 2012-Ohio-1837, ¶ 13 (where the defendant used force against the victim, an ex-girlfriend, by grabbing her and then subsequently took her phone, the court concluded that a robbery offense did not occur because "the force needed to hold [the victim] did not coincide with the taking of the cell phone"). Similarly, in the present matter, there is no question that Williams took Weimer's phone from her possession, there was a lapse in time during which they drove to multiple locations (the length of which is not entirely clear from the record), and Talkington was later injured after the pair entered Walmart and when Williams was chasing Weimer and Talkington. The theft of the phone had been completed at a separate time and location than the incident where Talkington was injured and the injury did not occur in relation to the theft.

{¶18} However, we find that the theft of the vehicle constituted a theft act which supported Williams' conviction for Aggravated Robbery, as the assault occurred while he was carrying out that theft offense and was part of a continuing course of conduct involving the vehicle theft.

6

Case No. 2023-T-0021

{¶19} The State argues that "a review of the record * * * demonstrates Appellant's actions causing [Talkington's] serious physical injuries were an accumulation of Appellant's 'one continuous occurrence,' or continuing course of conduct." In support, it cites authority on this issue which has been applied in the context of felony murder cases. In *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, the Ohio Supreme Court addressed the question of whether a defendant committed a Rape and Aggravated Robbery "*while* committing" aggravated murder under the felony murder statute. *Id.* at ¶ 54. It found that the term "while" does not indicate that the killing must occur "at the same instant" as the predicate felony or that the killing must have been caused by the felony. *Id.* at ¶ 55. It concluded that "the killing must be directly associated with the [felony] as part of one continuous occurrence" and that the death may occur leading up to, during, or immediately subsequent to the felony. (Citation omitted.) *Id.* at ¶ 56. Similarly, in *State v. Biros*, 78 Ohio St.3d 426, 678 N.E.2d 891 (1997), the Supreme Court concluded that the theft of a ring was associated with the killing as part of one continuous occurrence where a defendant killed the victim, dragged her corpse into the woods, and stole the ring from her finger while moving the body. *Id.* at 450. It concluded that appellant could not "escape the effect of the felony-murder rule by claiming that the aggravated robbery was simply an afterthought," observed that a "victim of a robbery, killed just prior to the robber's carrying off her property, is nonetheless the victim of an aggravated robbery," and noted that "[t]he victim need not be alive at the time of asportation." *Id.* at 451, citing *State v. Smith*, 61 Ohio St.3d 284, 290, 574 N.E.2d 510 (1991). *See also State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 129 ("[w]e repeatedly have rejected the argument that there is no aggravated robbery

7

when the victim's property is taken after he is murdered").

{¶20} While the foregoing cases relate to felony murder, courts in Ohio have applied this "continuous occurrence" analysis to Aggravated Robbery charges unrelated to felony murder. In determining whether an aggravated robbery was supported by the weight of the evidence, the Second District considered the foregoing authority and observed that whether the act of pointing a gun and committing a theft of speakers "amounted to 'one continuous occurrence'" was a question for the jury. It found there was sufficient evidence that pointing the gun at the victim provided the defendant the opportunity to steal the speakers and the act of pointing the gun was not removed in time from the theft. *State v. Engle*, 2d Dist. Montgomery No. 22934, 2009-Ohio-4787, ¶ 21. *See State v. Dunning*, 8th Dist. Cuyahoga No. 75869, 2000 WL 301007, *3 (Mar. 23, 2000) (considering whether a struggle outside of a store after a theft was part of a "single continuous transaction" for the purposes of the offense of aggravated robbery).

{¶21} Here, Williams' theft of the vehicle began at the time he ordered Weimer to provide him the keys to her vehicle, which occurred while he was still engaged in the act of abducting her. Immediately after taking possession of the keys, the two entered Walmart. Within a matter of minutes, Williams chased after Talkington and Weimer, which resulted in the serious injuries Talkington suffered. Shortly thereafter, following a confrontation with another Walmart employee, Williams exited the store and drove away in Weimer's vehicle, despite her requests that he not do so. The assault occurred while the theft was ongoing, which constituted inflicting serious physical harm "in * * * committing a theft offense," as required by the statute. R.C. 2911.01(A)(3). Even if the assault did not occur immediately at the moment the keys were taken or when the vehicle

8

was driven away, the acts committed were one continuous occurrence, with the assault occurring while Williams was still engaged in the act of taking the vehicle. Committing an assault during an ongoing theft has been found sufficient to support a conviction for aggravated robbery. *See State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 63-64 (holding there was sufficient evidence for a jury to find the essential elements of aggravated robbery when attempted theft of money from the state for an unemployment claim was "ongoing" and an assault occurred over attempted theft of a share of the fraudulent unemployment claim). As has been indicated in evaluating similar circumstances, the jury is in the best position to determine whether specific acts amounted to "one continuous occurrence." *Engle* at ¶ 21. We do not find that there was insufficient evidence to submit this issue to the jury for a determination of whether Williams committed Aggravated Robbery.

{¶22} We briefly note Williams' arguments that the State failed to demonstrate that the injuries were inflicted in fleeing immediately after a theft or attempted theft. Typically, findings that a defendant inflicted harm while "immediately fleeing" from a theft act occur in scenarios where there is a close temporal connection between the theft and the infliction of injury. Commonly, such a conclusion is reached where a defendant assaults employees or security personnel who intervene in a shoplifting incident, either when the theft has just occurred or during the pursuit of the defendant upon detecting the theft. *See In re Mills*, 11th Dist. Ashtabula No. 2001-A-0028, 2002-Ohio-3125, ¶ 22, *rev'd on other grounds* 97 Ohio St.3d 432, 2002-Ohio-6670, 780 N.E.2d 281 ("where a defendant struggles with store security guards outside a store immediately after a theft in an effort to escape apprehension, such conduct * * * is sufficient to establish the force element of

9

Case No. 2023-T-0021

robbery") (citation omitted); *State v. Brown*, 11th Dist. Lake No. 2013-L-120, 2014-Ohio-5702, ¶ 5-6, 18. In such matters, it has been determined that the defendant was immediately fleeing the theft act. In the present matter, the assault occurred while the theft was ongoing. Regardless, it is unnecessary to make such a determination since it is only necessary to decide whether harm was inflicted "in attempting or committing a theft offense * * * *or* while in fleeing immediately after the attempt or offense," not that both elements were satisfied. (Emphasis added.) R.C. 2911.01(A)(3).

{¶23} The sole assignment of error is without merit.

{¶24} For the foregoing reasons, Williams' conviction for Aggravated Robbery in the Trumbull County Court of Common Pleas is affirmed. Costs to be taxed against appellant.

EUGENE A. LUCCI, P.J.,

ROBERT J. PATTON, J.,

concur.